Henry P. Baer, Jr.
Tony Miodonka
**FINN DIXON & HERLING LLP**
177 Broad Street
Stamford, Connecticut  06901
Telephone:  (203) 325-5000
Facsimile:   (203) 325-5001
*Proposed Counsel to Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL FOREIGN EXCHANGE CONCEPTS HOLDINGS, INC.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 13-_____  (___) |
| In re:<br><br>INTERNATIONAL FOREIGN EXCHANGE CONCEPTS, L.P.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 13-_____  (___) |

**MOTION FOR AN ORDER EXTENDING THE TIME
TO FILE (I) SCHEDULES OF ASSETS AND LIABILITIES,
SCHEDULES OF CURRENT INCOME AND EXPENDITURES, SCHEDULES
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND STATEMENTS
OF FINANICAL AFFAIRS AND (II) REPORTS OF FINANCIAL INFORMATION**

International Foreign Exchange Concepts Holdings, Inc. ("IFEC") and International Foreign Exchange Concepts, L.P. ("IFEC LP," and together with IFEC, the "Debtors") hereby move the Court, by their undersigned proposed attorneys, for an Order pursuant to Federal Rule of Bankruptcy Procedure 1007(c) (the "Bankruptcy Rules") extending the time to file (i) schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases and statement of financial affairs (collectively, the "Schedules"), as required by Rule 1007(b)(1) of the Bankruptcy Rules, and (ii) periodic reports

{01723095; 2; 3440-2 }

of financial information pursuant to Bankruptcy Rule 2015.3 (the "Reports"), and in support hereof respectfully represents as follows:

## JURISDICTION

1.  The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of these proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested herein is authorized by Bankruptcy Rule 1007(c).

## BACKGROUND

2.  On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases. No committees have been appointed or designated.

Overview of the Debtors' Business

3.  Headquartered in New York City, FX Concepts (as the overall business is widely known) was one of the world's leading independent providers of foreign currency management and research services. Founded in 1981, the firm began as an advisory firm specializing in quantitative currency forecasting and providing research to major corporate and bank treasuries actively managing currency risk. The firm began managing external capital in 1988, and at its peak the fund managed over $14 billion in investments. As recently as February, 2013, the firm reported assets under management of more than $1 billion.

4. FX Concepts managed currencies for institutional investors through overlay and absolute return programs, and employed a methodology integrating the study of cycles, quantitative model-building, and technical forecasting. In addition to its investment management operations, the firm published and sold research on foreign exchange, interest rates, equities and commodities as part of a separate business.

5. The entire business enterprise of FX Concepts consisted of 11 separate entities. Overseas operations were housed in FX Concepts (Asia Pacific) Ltd, FX Concepts (Switzerland) GmbH, FX Concepts (Singapore) Ltd., FX Concepts (Bermuda) Limited, FX Concepts (UK) Ltd., and FX Concepts (B.V.I.), each of which is directly or indirectly funded by FX Concepts (UK Holdings) Ltd. (together, the "Overseas Companies"). None of the Overseas Companies are debtors in these proceedings, and to date none have initiated insolvency proceedings in their respective local jurisdictions.

6. In addition to the Debtors, the firm's domestic operations were conducted by FX Concepts, LLC and FX Concepts Trading Advisor LLC. These entities functioned as investment managers and advisors for the various FX Concepts funds. Neither FX Concepts, LLC nor FX Concepts Trading Advisor LLC are debtors in these proceedings, and neither have otherwise initiated insolvency proceedings.

7. The Debtors in these cases are the ultimate direct and indirect parents of all other FX Concepts entities. IFEC LP holds all of the issued and outstanding equity interests in FX Concepts (UK Holdings) Ltd., FX Concepts LLC and FX Concepts Trading Advisors LLC. IFEC, in turn, is the general partner in IFEC LP.

8. The FX Concepts funds have been shut down and the investor funds (all of which are held in and managed by non-debtors) have either been or will soon be returned to investors.

There have been no allegations of misconduct, fraud, or mismanagement by any of the FX Concepts entities, employees or advisors, and other than ordinary course investment losses no investor funds have been lost.

Funding and Capital Structure

9.     FX Concepts is independent and is almost entirely employee-owned. While John Taylor (including family trusts), the Chairman and Founder of the firm, controls 47% of the shares, Jonathan H. Clark (including family trusts) owns 22%, and Philip E. Simotas owns 15%, two thirds of its former employees are shareholders.

10.    Although the Debtors have no secured debt, they financed their operations with unsecured debt. Specifically, IFEC LP entered into a Note Purchase Agreement (the "2006 NPA"), dated as of November 28, 2006, with AMF-FXC Finance, LLC ("AMF") and Asset Management Finance Corporation, as lenders. As part of the 2006 NPA, IFEC LP issued a Revenue Share Note (as amended and restated in 2012, the "2006 Revenue Share Note"), dated as of November 28, 2006, in favor of AMF in the principal amount of $20 million. In connection with the 2006 NPA and the 2006 Revenue Share Note, the Debtor also issued a Make-Whole Promissory Note (as amended and restated in 2012, the "2006 Make-Whole Note"), dated as of November 28, 2006, in favor of AMF. By its terms, the 2006 Make-Whole Note only becomes effective after certain specified events of default.

11.    In June 2010, IFEC LP entered into a second Note Purchase Agreement (as amended, the "2010 NPA," and together with the 2006 NPA, the "NPAs"), dated as of June 7, 2010, with AMF and Asset Management Finance Corporation, as lenders. As part of the 2010 NPA, IFEC LP issued another Revenue Share Note (as amended and restated in 2012, the "2010 Revenue Share Note," and together with the 2006 Revenue Share Note, the "Revenue Shares

Notes"), dated as of June 7, 2010, in favor of AMF, and also in the principal amount of $20 million. In connection with the 2010 NPA and the 2010 Revenue Share Note, the Debtor also issued a Make-Whole Promissory Note (as amended and restated in 2012, the "2010 Make-Whole Note," and together with the 2006 Make-Whole Note, the "Make-Whole Notes"), dated as of June 7, 2010, in favor of AMF. As is the case with the 2006 Make-Whole Note, the 2010 Make-Whole Note only becomes effective after certain specified events of default. The NPAs, Revenue Share Notes, and Make-Whole Notes are collectively referred to herein as the "Loan Documents."

12. In 2012, as a result of their financial condition, the Debtors and AMF negotiated certain relief from the Debtors' obligations under the Loan Documents (the "2012 Agreement"). Among other things, the Debtors and AMF agreed that the Debtors would have the right to defer certain quarterly payments due to AMF under the Revenue Share Notes for up to 8 quarters. In connection with the 2012 Agreement, John Taylor, the Chief Executive Officer and Founder of the Debtors, entered into a personal Guarantee, dated as of December 14, 2012, in favor of AMF, under which Mr. Taylor guaranteed the payment of any such deferred payments. In connection with that personal guarantee, Mr. Taylor granted security interests to AMF to secure his obligations under the guarantee.

13. According to the Debtors' books and records, approximately $34.4 million is due under the Revenue Share Notes. AMF has asserted that the Make-Whole Notes have been triggered (which, if true, would replace the Revenue Share Notes), but have not yet asserted a specific amount due thereunder.

Events Leading to Bankruptcy

14. The collapse of the Debtors' business is largely tied to the deterioration of the foreign currency market. According to a recent Wall Street Journal article, currency funds in general are down this year for the third year in a row. According to that same article, "assets in hedge-fund strategies dedicated to currency trading have fallen to $21.6 billion, down nearly 50%" from its peak.

15. In connection with that global pullback in the market in general, the Debtors' performance lagged, and investors eventually began redeeming their investments. Although the Debtors worked for months to negotiate relief from AMF and to identify alternative business solutions upon which they could restructure business operations, those negotiations proved unsuccessful. The "final straw" came in September, 2013, when the San Francisco Employee Retirement System gave notice that it was redeeming its investment in full. That investment made up almost 66% of the Debtors' total assets under management at that point, and the redemption proved fatal to the Debtor's business.

16. The Debtors have now largely terminated all operations and are otherwise winding down all business and maximizing the value of their assets for the benefit of their creditors. They have terminated all employees other than a handful who are necessary for the wind-down, and are currently in the process of liquidating their remaining assets. They have filed for protection under Chapter 11 of the Bankruptcy Code to preserve value while they undertake that orderly liquidation.

**RELIEF REQUESTED**

17. By this Motion, the Debtors seek a 45 day extension of the deadline within which they must file their Schedules and Reports.

18.    Bankruptcy Rule 1007(b) requires that (i) a schedule of assets and liabilities, (ii) a schedule of current income and expenditures, (iii) a schedule of executory contracts and unexpired leases, and (iv) a statement of financial affairs be filed with a debtor's petitions, or within 14 days thereafter, unless otherwise ordered by the court.  As a result, unless ordered otherwise by this Court, the Debtors' Schedules would be due on or about December 1, 2013.  Subsection (c) of Bankruptcy Rule 1007 permits an extension of that deadline on notice and motion for cause shown.

19.    In this case, the Debtors believe that an extension of the time to file their Schedules is warranted.  Because of the severe shortage of personnel and the exigencies of the Debtors' financial circumstances, the Debtors have not yet been able to gather the necessary data to complete the Schedules.  Once the Debtors have compiled the necessary information, counsel will need additional time to review the information and convert the information into the appropriate format for filing with the Court, as required by Bankruptcy Rule 1007(b)(1).

20.    Given the size of the Debtors' remaining workforce, the pressing issues attendant to the filing, and the Debtors' economic circumstances, the Debtors believe that additional time to file their Schedules is reasonable, appropriate, and warranted.

21.    Pursuant to Bankruptcy Rule 2015.3, a Chapter 11 debtor must file, no later than seven days before the date set for meeting of creditors required by section 341 of the Bankruptcy Code (the "341 Meeting"), and no less than every six months thereafter, periodic financing reports of the value, operations and profitability of each entity that is not a publicly traded corporation or a debtor in the Chapter 11 case and in which the estate holds a substantial or controlling interest.  Bankruptcy Rule 9006(b)(1) provides the Court with the ability to enlarge the period of time to file the 2015.3 Reports "for cause."  Bankruptcy Rule 2015.3(d) also

provides the Court with the ability, after notice and a hearing, to modify the reporting requirement for cause, including that the debtor is "not able, after a good faith effort, to comply with those requirements, or that the information . . . is publicly available." Bankruptcy Rule 2015.3(d).

22. Extending the deadlines for the initial Rule 2015.3 Reports will enable the Debtors to work with their bankruptcy counsel, financial advisors and the United States Trustee for the Southern District of New York (the "U.S. Trustee") to determine the appropriate nature and scope of the Rule 2015.3 Reports and any proposed modifications to the reporting requirement established by Bankruptcy Rule 2015.3. Accordingly, the Debtors respectfully request that the Court extend the time by which the Debtors must either file their initial 2015.3 Reports or file a motion with the Court seeking appropriate modifications of such reporting requirements until 45 days after the 341 Meeting, for cause, pursuant to Bankruptcy Rule 2015.3(d).

23. The relief requested herein will not prejudice any party in interest. The Debtors intend to work cooperatively with the U.S. Trustee and any official committee appointed in these Chapter 11 cases to provide access to the relevant information regarding the Debtors' business and financial affairs.

## **NOTICE**

24. Notice of this Motion has been given via e-mail, facsimile, telephone, and/or hand delivery, as appropriate, to the United States Trustee, each of the Debtors' 20 largest general unsecured creditors, Asset Management Finance LLC, the United States Attorney General, the Internal Revenue Service and the Securities and Exchange Commission. The Debtors submit that no other or further notice need be given under the circumstances.

## NO PRIOR REQUEST

25. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court enter the attached proposed Order extending the deadline to file their Schedules by forty-five days and for such other and further relief as this Court deems just and proper.

Dated: October 17, 2013  
Stamford, Connectcut

By: /s/ Henry P. Baer, Jr.  
Henry P. Baer, Jr.  
Tony Miodonka  
FINN DIXON & HERLING LLP  
177 Broad Street  
Stamford, CT  06901-2689  
Tel.:  (203) 325-5000  
Fax:  (203) 325-5001

*Proposed Counsel to Debtors*