Henry P. Baer, Jr.
Tony Miodonka
**FINN DIXON & HERLING LLP**
177 Broad Street
Stamford, Connecticut  06901
Telephone:    (203) 325-5000
Facsimile:     (203) 325-5001
*Counsel to Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>INTERNATIONAL FOREIGN EXCHANGE<br>CONCEPTS HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 13-13379 (REG)<br><br>Jointly Administered |

**FINDINGS OF FACTS, CONCLUSIONS OF LAW AND ORDER CONFIRMING
THE FIRST AMENDED CHAPTER 11 LIQUIDATING PLAN OF INTERNATIONAL
FOREIGN EXCHAGE CONCEPTS HOLDINGS, INC., INTERNATIONAL
FOREIGN EXCHANGE CONCEPTS, L.P. AND FX CONCEPTS, LLC**

International Foreign Exchange Concepts Holdings, Inc. ("**IFEC**"), International Foreign

Exchange Concepts, L.P. ("**IFEC LP**"), and FX Concepts, LLC ("**FXC**," and together with IFEC

and IFEC LP, the "**Debtors**"), having:[1]

- commenced their Chapter 11 cases (collectively, the "**Chapter 11 Cases**") by voluntarily filing petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") on October 17, 2013 and October 23, 2013, respectively (for each, the "**Petition Date**");

- proposed the *First Amended Chapter 11 Liquidating Plan of International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P and FX Concepts, LLC*, dated as of December 18, 2014 [Docket No. 389] (the "**Plan**");

- filed the Plan Supplement dated as of January 23, 2015 [Docket No. 416];

---

[1]  Unless otherwise noted, capitalized terms not defined herein (the "**Confirmation Order**") shall have the meanings ascribed to them in the *First Amended Chapter 11 Liquidating Plan of International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P and FX Concepts, LLC* [Docket No. 389].

- distributed solicitation materials beginning on or about December 22, 2014 consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Bankruptcy Court's *Order (I) Approving Disclosure Statement, (II) Approving Solicitation and Notice Materials, (III) Establishing Solicitation and Voting Procedures, (IV) Scheduling a Confirmation Hearing and (V) Establishing Notice and Objection Procedures* dated December 19, 2014 [Docket No. 390] (the "**Disclosure Statement Order**") as evidenced by the *Affidavits of Service of Kathleen M. Logan related to First Amended Disclosure Statement and First Amended Liquidating Plan Solicitation* [Docket Nos. 403, 404, 405, 406, 407 and 408];

- caused the Disclosure Statement, the Plan and the Plan Supplement to be posted on the website maintained by the Debtors' Court-appointed claims and noticing agent, Logan & Company, Inc. ("**Logan**") at www.logananco.com;

- filed the *Declaration of Kathleen M. Logan Certifying Methodology for Tabulating Votes On, and Results of Voting With Respect to, The First Amended Chapter 11 Liquidating Plan of International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P., and FX Concepts, LLC,* dated January 28, 2015 [Docket No. 418] (the "**Voting Certification**"), attesting to and certifying the method and results of the ballot tabulation for the Classes of Claims entitled to vote accept or reject the Plan; and Notice of Filing of Plan Supplement dated as of January 23, 2015 [Docket No. 416]; and

This Court, having:

- entered the Disclosure Statement Order on December 19, 2014;

- set, pursuant to the Disclosure Statement Order, February 3, 2015 at 9:45 a.m. (Prevailing Eastern Time) as the date and time for commencement of the Confirmation Hearing;

- reviewed and considered the Plan (including the Plan Supplement), the Disclosure Statement, the Disclosure Statement Order, the Voting Certification, and all related documents; and the Bankruptcy Court being fully familiar with the Plan and other relevant factors affecting the Chapter 11 Cases;

- reviewed and being fully familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases since the commencement of the Chapter 11 Cases; and upon all of the proceedings had before the Bankruptcy Court and upon the entire record of the cases, including but not limited to the Disclosure Statement, the Plan, the Plan Supplement, and the lack of objections thereto; and

- determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein; and for the reasons set forth in the findings of fact and conclusions of law below (the "**Findings of Fact**

2

and **Conclusions of Law**"); and after due deliberation and sufficient cause appearing therefor;

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

**A.** **Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))**

This Court has jurisdiction over these Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to section 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.** **Commencement and Joint Administration**

On October 17, 2013, IFEC and IFEC LP each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and on October 23, 2013, FXC filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Each Debtor, following its Petition Date , has managed its properties as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. On October 23, 2013, the Bankruptcy Court entered an order authorizing the joint administration of the Debtors' Chapter 11 Cases.

**C.** **Transmittal and Mailing of Materials; Notice**

The Disclosure Statement, the Plan, the Ballots or Notice of Non-Voting Status, the Disclosure Statement Order, and the notice of the Confirmation Hearing were transmitted and served as set forth in the Disclosure Statement Order and the Bankruptcy Rules, and such

---

[2]  Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

transmittal and service (as attested in the relevant affidavits filed with this Court) were adequate

and sufficient, and no other or further notice is or shall be required.

### D.    <u>Solicitation and Notice</u>

Notice of the Confirmation Hearing and the solicitation of votes on the Plan complied with

the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the

circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions of the

Bankruptcy Code, the Bankruptcy Rules and this Court's Local Rules (the "**<u>Local Rules</u>**").  Notice

of the Plan Supplement and all related documents was appropriate and satisfactory based upon the

circumstances of the Debtors' Chapter 11 Cases and the terms of the Disclosure Statement Order,

and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the

Local Rules.

### E.    <u>Voting</u>

As set forth in the Voting Certification, votes to accept and reject the Plan have been

solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and industry practice.

### F.    <u>Classed Deemed to Have Accepted the Plan</u>

Classes 1, 2 and 3C are not impaired under the Plan.  Accordingly, each holder of a Claim

or Equity Interest in such Classes is conclusively presumed to have accepted the Plan pursuant to

section 1126(f) of the Bankruptcy Code.

### G.    <u>Classed Deemed to Have Rejected the Plan</u>

Classes 4A and 4B are impaired.  Each holder of a Claim or Equity Interest in such Classes

will not receive or retain any property under the Plan on account of such Claim or Equity Interest

and, accordingly, is deemed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code.

### H.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))

The Plan complies with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(1) of the Bankruptcy Code.

### I.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))

In addition to the Administrative Expense Claims and Priority Tax Claims described in

Article II of the Plan, which need not be classified, the Plan designates nine (9) Classes of Claims

and Equity Interests.  The Claims and Equity Interests placed in each Class are substantially

similar to the other Claims or Equity Interests, as the case may be, in such Class.  Valid business,

factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity

Interests created under the Plan, and such Classes do not unfairly discriminate between holders of

Claims and Equity Interests.  The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy

Code.

### J.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))

Section 3.1 and Article IV of the Plan specify that Classes 1, 2, and 3C are unimpaired

under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

### K.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

Section 3.1 and Article IV of the Plan specify Classes 3A, 3B, 3D, 4A, 4B and 4C as

impaired under the Plan and specify the treatment of Claims and Equity Interests in such Classes,

thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

### L.    No discrimination (11 U.S.C. § 1123(a)(4))

The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest

in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a

less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of

the Bankruptcy Code.

**M.**    **Implementation of Plan (11 U.S.C. § 1123(a)(5))**

The Plan and Plan Supplement provide adequate and proper means for implementation of the Plan, including (among other things), (i) the establishment of a Liquidating Trust, (ii) the appointment of a Liquidating Trustee, (iii) the vesting of all property of the Estates in the Liquidating Trust, (iv) the dissolution of the Debtors, (v) the resignation of the Debtors' remaining officers and members of their respective boards of directors and managers, and (vi) the preservation of Claims and Causes of Action in accordance with sections 1123(a)(5)(A) and 1123(b)(3) of the Bankruptcy Code, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

**N.**    **Additional Plan Provisions (11 U.S.C. § 1123(b))**

The provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

**O.**    **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(i)    The Debtors are proper debtors under section 109 of the Bankruptcy Code;

(ii)    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(iii)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots or Notice of Non-Voting Status, as the case may be, and related documents in soliciting and tabulating votes on the Plan.

**P.**    **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**

The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and records of these Chapter 11 Cases, the Disclosure Statement and the hearing

thereon, and the record of proceedings held in these Chapter 11 Cases.  The Plan was proposed

with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to

effectuate an orderly and successful liquidation of the Debtors.

**Q.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

Any payment made or to be made by any of the Debtors for services or for costs and

expenses in or in connection with the Chapter 11 Cases, or in conjunction with the Plan and

incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, this Court

as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**R.      No Rate Charge (11 U.S.C. § 1129(a)(6))**

The Debtors do not charge rates subject to regulation by a governmental commission.

Accordingly, section 1129(a)(6) of the Bankruptcy Code is satisfied.

**S.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**

The liquidation analysis provided in the Disclosure Statement (i) is persuasive and credible,

(ii) has not been controverted by other evidence, and (iii) established that each holder of an

impaired Claim or Equity Interest will receive or retain under the Plan, on account of such Claim

or Equity Interest, property of a value as of the Effective Date that is not less than the amount that

such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the

Bankruptcy Code on such date.  Accordingly, the Plan satisfies section 1129(a)(7) of the

Bankruptcy Code.

**T.      Acceptance of Certain Classes (11 U.S.C.§ 1129(a)(8))**

Section 1129(a)(8) is satisfied with respect to (i) Classes 3A, 3B and 3D, which have voted

to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, as set forth in the

Voting Certification, (ii) Class 4C, which Class is a proponent of the Plan and deemed to have

voted to accept the Plan, and (iii) Classes 1, 2, and 3C, which are not impaired under the Plan

7

(collectively the "**Accepting Classes**").  Section 1129(a)(8) has not been satisfied with respect to

Classes 4A and 4B, which will not receive or retain any property under the Plan and therefore are

deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (collectively

the "**Rejecting Classes**").  Nevertheless, the Plan is confirmable because the Plan satisfies section

1129(b) of the Bankruptcy Code with respect to the Rejecting Classes, as addressed below.

     **U.**     **Treatment of Administrative, Priority Tax and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9))**

The treatment of Administrative Expense Claims, Priority Non-Tax Claims and Priority

Tax Claims pursuant to Sections 2.2, 2.3 and 4.1 of the Plan, respectively, satisfies the respective

requirements of sections 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

     **V.**     **Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))**

With respect to each of the Debtors, at least one Class of Claims that is impaired under the

Plan has accepted the Plan, as determined without including any acceptance of the Plan by any

insider of such Debtor, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

     **W.**     **Feasibility (11 U.S.C. § 1129(a)(11))**

The information and mechanics contained in the Disclosure Statement (i) are credible and

persuasive, (ii) have not been controverted by other evidence, and (iii) establish that confirmation

of the Plan is not likely to be followed by the need for further financial reorganization of the

Debtors (except as may be contemplated in the Plan), thereby satisfying section 1129(a)(11) of the

Bankruptcy Code.  The Plan also addresses the discharge and release of Claims and Liens against

non-Debtors, which is a necessary component of the Plan.

     **X.**     **Payment of Fees (11 U.S.C.§1129(a)(12))**

With respect to each of the Debtors, all fees payable under section 1930 of title 28 of the

United States Code, as determined by the Bankruptcy Court on the Confirmation Date, have been

paid or will be paid on or promptly after the Effective Date, and thereafter as may be required, until entry of a final decree with respect to such Debtor, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**Y.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**

Because the Debtors have no retiree benefits, the Plan satisfies the obligations of section 1129(a)(13).

**Z.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. §1129(b))**

The Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes as required by section 1129(b)(1) of the Bankruptcy Code.  No holder of a Claim or Equity Interest that is junior in right of payment to the Claims or Equity Interests classified in the Rejecting Classes will receive or retain under the Plan any property on account of such junior interest.  The legal rights of holders of Claims and Equity Interests in such Classes are treated consistently with the treatment of other Classes whose legal rights are substantially similar, and such holders do not receive more than they legally are entitled to receive for their Claims and Equity Interests. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Accordingly, upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all of the holders of Claims and Equity Interests of the Rejecting Classes.

**AA.    Principal Purpose of the Plan (11 U.S.C. §1129(d))**

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

**BB.    Good Faith Solicitation (11 U.S.C. §1125(e))**

Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors and their directors, officers, employees, financial advisors, attorneys, and other professionals and

agents have solicited acceptances of the Plan in good faith and in compliance with the applicable

provisions of the Bankruptcy Code.  The Debtors, and their respective principals, members,

managers, officer, directors, employees and agents (including any attorneys, financial advisors,

and other professionals retained by such persons) have acted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the

Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating

to the solicitation of acceptances of the Plan and their participation in the activities described in

section 1125 of the Bankruptcy Code and, together with any of their respective successors or

assigns, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the

exculpation provisions set for in Section 9.8 of the Plan including, without limitation, for any act

or omission taken or not taken in connection with, or arising out of, the Chapter 11 Cases, the

Disclosure Statement, the Plan, the solicitation of votes for and the pursuit of confirmation of the

Plan, including, without limitation, the administration of the Plan or the property to be distributed

under the Plan; *provided, however,*  that such exculpation and protections afforded by section

1125(e) of the Bankruptcy Code and the exculpation provisions of Section 9.8 of the Plan shall

apply.

**CC.**    **Releases**

Each of the parties released or indemnified pursuant to Sections 9.4, 9.5 and 9.6 of the Plan

(such releases and indemnification provisions, the "**Releases**" and the parties released or

indemnified thereunder collectively, the "**Released Parties**"), have made substantial concessions

and contributions throughout the Chapter 11 Cases that allowed the officers and directors of the

Debtors to manage such entities successfully in the future.  The Releases were extensively

negotiated between the Debtors, the releasing parties and the Released Parties through arms'-

length negotiations.  The Releases incorporated in the Plan are integral to the structure of the Plan and formed part of the agreement among all parties in interest embodied thereby.

### DD.    Rejection

Article VIII of the Plan governing the rejection of executory contracts and unexpired leases, satisfies the requirements of section 365(b) of the Bankruptcy Code.

### EE.    Retention of Jurisdiction

The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

### FF.    Waiver of Stay

The Debtors have made a sufficient and uncontroverted showing of substantial cost and harm that would result if the Plan is not consummated as soon as practicable after entry of the Confirmation Order.

### GG.    Judicial Notice of Docket

This Court has taken judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of this Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of the Chapter 11 Cases.

### DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation.  The Plan, attached hereto as Exhibit A is hereby CONFIRMED under section 1129 of the Bankruptcy Code.

2.    Terms Binding.  The terms of the Plan shall be effective and binding from and after the Confirmation date, but subject to the Effective Date of the Plan.

3.    <u>Separate Plans</u>.  The Plan is a separate plan for each of the three Debtors. Accordingly, the provisions of the Plan, including without limitation the definitions and distributions to creditors and equity interest holders, shall apply to the respective assets of, claims against, and equity interests in, each Debtor's separate estate.

4.    <u>Objections</u>.  All parties in interest have had a full and fair opportunity to submit objections to the Plan and entry of this Order confirming the Plan.  Any objection to the Plan, to the extent not resolved hereby, is hereby over-ruled.

5.    <u>Plan Classification Controlling</u>.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and Equity Interest holders in connection with voting on the Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes and (c) shall not be binding on the Debtors.

6.    <u>Objections with Respect to Treatment of Executory Contracts and Unexpired Leases</u>.  The requirements for rejection of each executory contract or unexpired lease have been satisfied, and each such rejection is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.  The Debtors or any counterparty to an executory contract or unexpired lease shall have the right to submit any dispute related to any executory contract or unexpired lease to the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to hear any such dispute.

7.      Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of executory contracts and unexpired leases pursuant to the Plan must be filed and served upon the Debtors and their counsel no later than thirty (30) days after, as applicable, the date that notice is mailed regarding entry of the Confirmation Order if such contract or unexpired lease is rejected pursuant to the Plan. Any such Claim not filed within such time shall be forever barred from assertion against the Debtors and their estates or their property.

8.      General Authorizations.  Each of the Debtors or the Liquidating Trustee is authorized, ordered and instructed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate consistent with the language of the Plan to effectuate, implement and further evidence the terms and conditions of the Plan without further Order of this Court and without further corporate action, including, without limitation, to take all actions required by Article VII of the Plan to establish the Liquidating Trust, appoint the Liquidating Trustee, and effectuate the Liquidating Trust Agreement.

9.      Approval of the Liquidating Trust and Appointment of the Liquidating Trustee. The establishment of the Liquidating Trust in accordance with the terms of the Plan, the Liquidating Trust Agreement and any related documents is hereby approved.  Michael Meenan of CDG Group LLC is hereby approved and appointed as the Liquidating Trustee and shall serve in that capacity in accordance with the terms of the Plan, the Liquidating Trust Agreement and any related documents and, in connection therewith, is authorized to take any all actions necessary in furtherance of the discharge of the Liquidating Trustee's obligations under the Plan, the Liquidating Trust Agreement, the Plan Supplement documents and any related documents.  To the

13

extent necessary, the appointment of the Liquidating Trustee is approved pursuant to section

1123(b)(3)(B) of the Bankruptcy Code; *provided, however,* that the Liquidating Trustee's

compensation shall be as set forth in Section 7.8 of the Plan or otherwise governed by the

applicable Plan Supplement document.

10.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute

all approvals and consents required, if any, by the laws, rules or regulations of any state or any

other  governmental authority with respect to the implementation or consummation of the Plan and

any documents, instruments, or agreements, and any amendments or modifications thereto, and

any order acts referred to in, or contemplated by, the Plan, the Disclosure Statement, and any

documents, instruments, or agreements, and any amendments or modifications thereto.

11.    <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy

Code, the issuance transfer, or exchange of notes or equity securities under or in connection with

the Plan, the assignment or surrender of any lease or sublease, or the delivery of any deed or other

Instrument or transfer under, in furtherance of, or in connection with the Plan, including any deeds,

bills of same, assignments, mortgages, deeds of trust or similar documents executed in connection

with any assets subject to the Plan, shall not be subject to any stamp, real estate transfer, mortgage

recording, sales, use or other similar tax nor any Uniform Commercial Code filing or recording fee

or similar or other governmental assessment.  All appropriate state or local government officials or

agents shall forgo the collection of any such tax or governmental assessment and to accept for

filing and recordation any of the foregoing Instruments or other documents without the payment of

any such tax or governmental assessment.

12.    <u>Exemption from Securities Laws</u>. Pursuant to section 1125(e) of the Bankruptcy

Code, the Debtors' transmittal of Plan solicitation materials as set forth herein and their solicitation

of acceptances of the Plan are not and will not be governed by or subject to any otherwise

applicable law, rule, or regulation governing the solicitation or acceptance of a plan of

reorganization or the offer, issuance, sale or purchase of securities.

13.     Final Fee Applications/Professional Compensation and Reimbursement

Claims/Administrative Expense Claims.  Pursuant to Section 2.2 of the Plan, any entity seeking an

award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of

expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3),

503(b)(4), or 503(b)(5) of the Bankruptcy Code shall file its final application for allowance of such

compensation and/or reimbursement by no later than 30 days after the Effective Date.  Any

objections to final applications for allowance of compensation and/or reimbursement shall be filed

no later than seven calendar days before the hearing on such final applications.

14.     Injunction. Except as otherwise provided in the Plan or in this Order, subject to the

occurrence of the Effective Date, this Order shall act as a discharge of all Administrative Expenses

and Claims against, Equity Interests in, liens on, and any other interests in the Debtors, the

Debtors' assets, and their properties, arising at any time before the Effective Date, including

Administrative Expense Claims, Claims and Equity Interests that arose before the Effective Date

and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code,

against the Debtors, regardless of whether or not: (x) a proof of claim or proof of interest based on

such discharged debt or interest is filed or deemed filed with the Bankruptcy Court pursuant to

section 501 of the Bankruptcy Code, (y) whether the Administrative Expense Claim, Claim or

Equity Interest is Allowed, or (z) the holder of an Administrative Expense Claim, Claim or Equity

Interest based on such discharged debt or interest has accepted the Plan or is entitled to receive a

distribution thereunder. Upon the Effective Date, any holder of such discharged Administrative

Expense Claim, Claim or Equity Interest shall be precluded from asserting against the Debtors, the

Liquidating Trust, or their assets or properties any other or future Administrative Expense Claims,

Claims or Equity Interests based upon any document, Instrument, act or omission, transaction or

other activity of any kind or nature that occurred before the entry of this Order. This Order shall be

a judicial determination of discharge of all such liabilities of the Debtors, subject to the occurrence

of the Effective Date.

15.      Notice of Confirmation of Plan and Effective Date. Pursuant to Bankruptcy Rules

2002(f), 2002(k) and 3020(c), on or before the date that is five (5) Business Days following the

occurrence of the Effective Date under the Plan, the Debtors shall electronically file with the

Bankruptcy Court a notice of the Confirmation of the Plan and occurrence of the Effective Date

(the "**Notice of Confirmation of Plan and Effective Date**"), and further shall cause the Notice of

Confirmation of Plan and Effective Date to be served by first-class mail, postage prepaid, upon all

holders of Claims and Equity Interests, the U.S. Trustee, and on the parties identified on the

Master Service List.

16.      Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the

Bankruptcy Code and the provisions of this Confirmation Order, the Plan shall apply and be

enforceable notwithstanding any otherwise applicable non-bankruptcy law.

17.      Final Order.  Pursuant to Bankruptcy Rule 3020(e), for good cause shown, this

Confirmation Order is a final order and the period in which an appeal must be filed shall

commence upon the entry hereof.

18.      Waiver of Stay. For good cause shown, the stay of confirmation set forth in

Bankruptcy Rule 3020(e) is hereby waived.

19.     <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include

any particular provision of the Plan or any related agreement (including without limitation, the

Liquidating Trust Agreement) in this Confirmation Order shall not diminish the effectiveness of

such provision or agreement and such provision or agreement shall have the same validity, binding

effect and enforceability as every other provision of the Plan, it being the intent of the Bankruptcy

Court that the Plan is confirmed in its entirety and it and the Plan Supplement are incorporated

herein by reference.  The provisions of this Confirmation Order are integrated with each other and

are nonseverable and mutually dependant unless expressly stated by further Order of this Court.

20.     <u>Retention of Jurisdiction</u>. Except as otherwise set forth herein, this Court may

properly, and upon the Effective Date shall retain jurisdiction over the matters arising in and under,

and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and section 1142 of the

Bankruptcy Code.

Dated: New York, New York
       February 3, 2015

                                        *s/ Robert E. Gerber*
                                        Honorable Robert E. Gerber
                                        United States Bankruptcy Judge

Henry P. Baer, Jr.
Tony Miodonka
**FINN DIXON & HERLING LLP**
177 Broad Street
Stamford, Connecticut  06901
Telephone:   (203) 325-5000
Facsimile:    (203) 325-5001

*Counsel to Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTERNATIONAL FOREIGN EXCHANGE CONCEPTS HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 13-13379 (REG)<br><br>Jointly Administered |

**FIRST AMENDED CHAPTER 11 LIQUIDATING PLAN OF**
**INTERNATIONAL FOREIGN EXCHANGE CONCEPTS**
**HOLDINGS, INC., INTERNATIONAL FOREIGN**
**EXCHANGE CONCEPTS, L.P. AND FX CONCEPTS, LLC**

Dated: December 18, 2014

International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P. and FX Concepts, LLC, debtors and debtors-in-possession in case numbers 13-13379 (REG), 13-13380 (REG) and 13-13446 (REG), and procedurally consolidated under docket number 13-13379 (REG) in the United States Bankruptcy Court for the Southern District of New York, hereby propose the following plan of liquidation under Section 1121 of the United States Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I. A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "in the Plan," "the Plan," "hereto," "herein," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**1.1** "Administrative Expense Claim" shall mean a Claim for costs and expenses of administration of the Bankruptcy Cases that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the Debtors; (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code; and (d) all other Claims entitled to administrative claim status pursuant to a Non-Appealable Order of the Bankruptcy Court.

**1.2** "Affiliate" shall mean any Person that is an affiliate of any of the Debtors under the Bankruptcy Code.

**1.3** "Allowed" shall mean, with reference to any Claim:

(a) A Claim that has been listed by a Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b) A Claim as to which a timely proof of claim has been filed by the Bar Date or within the time permitted by Bankruptcy Rule 3003(c)(3) and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Non-Appealable Order;

1

(c)    A Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)    Any Claim expressly allowed or provided for in the Plan, or pursuant to an order of the Bankruptcy Court including, without limitation, the Confirmation Order.

**1.4**    "AMF" shall mean AMF-FXC Finance, LLC, a Delaware limited liability company.

**1.5**    "AMF Claim" means any and all claims by AMF or Asset Management Finance LLC, or any subsidiary or affiliate thereof, against any of the Debtors, including but not limited to (i) the proof of claim filed by AMF against IFEC Holdings in the amount of $34 million, which was registered by the Debtors as claim number 59, (ii) the proof of claim filed by Asset Management Finance LLC against IFEC Holdings in the amount of $34 million, which was registered by the Debtors as claim number 58, (iii) the proof of claim filed by AMF against IFEC LP in the amount of $34 million, which was registered by the Debtors as claim number 60, and (iv) the proof of claim filed by Asset Management Finance LLC against IFEC LP in the amount of $34 million, which was registered by the Debtors as claim number 57.

**1.6**    "Asset(s)" shall mean the IFEC Holdings Assets, the IFEC LP Assets and the FXC Assets.

**1.7**    "Avoidance Actions" shall mean Causes of Action arising or held by any Debtor under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.8**    "Bankruptcy Cases" shall mean the Debtors' bankruptcy cases pending in the Bankruptcy Court.

**1.9**    "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time.

**1.10**    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York in which the Bankruptcy Cases are pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.11**    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.12**    "Bar Date" shall mean January 31, 2014.

**1.13**    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of New York.

**1.14**   "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.15**   "Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than a Debtor or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions included in the list of approved institutions promulgated by the Office of the United States Trustee.

**1.16**   "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, (a) Avoidance Actions, (b) rights of setoff, counterclaim and recoupment, (c) claims and defenses on contracts or for breaches of duties imposed by law, (d) the right to object to Claims or Equity Interests, (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code, (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury, (g) claims and defenses based on the theories of equitable subordination or lender liability, (h) claims and defenses for unjust enrichment, and (i) claims for tax refunds.

**1.17**   "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.18**   "Class(es)" shall mean those classes designated in Article III of the Plan.

**1.19**   "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.20**   "Confirmation" shall mean confirmation of this Plan by the Bankruptcy Court under Section 1129 of the Bankruptcy Code.

**1.21**   "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Cases.

**1.22**   "Confirmation Hearing" shall mean the hearing before the Bankruptcy Court on Confirmation of the Plan.

**1.23** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.24** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.25** "Debtor" shall mean each of IFEC Holdings, IFEC LP and FXC, respectively.

**1.26** "Debtor Released Parties" shall mean each of the Debtors, the Debtors' current and former officers, directors, employees, stockholders, members, general and limited partners, affiliates, agents, counsel and other representatives, and their respective heirs, executors, administrators, successors, and assigns; *provided that,* notwithstanding any other terms of this Plan, the sole release by AMF or the Debtors of John R. Taylor, Jr., and his agents, counsel and other representatives, and their respective heirs, executors, administrators, successors and assigns, shall be the release provided in the Term Sheet with Mr. Taylor approved by the Bankruptcy Court in its Order dated July 29, 2014.

**1.27** "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all amendments, exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.28** "Disputed Claim" shall mean:

(a)    If no proof of claim relating to a Claim has been filed, a Claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    If a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtors, Liquidating Trustee, or a party with standing to dispute the Claim in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Non-Appealable Order; or

(c)    A Claim that is a Contingent or Unliquidated Claim.

**1.29** "Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

**1.30** "Disputed Claims Reserve" shall mean a reserve equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Non-Appealable Order.

**1.31** "<u>Distribution Record Date</u>" shall mean the date that is ten (10) days prior to the entry of the Confirmation Order.

**1.32** "<u>Effective Date</u>" shall mean the first Business Day after the later to occur of (a) the fifteenth day following the entry of the Confirmation Order, provided that no stay pending appeal of the Confirmation Order has been granted, or (b) the date that all conditions precedent to the effectiveness of the Plan have been satisfied or waived by the Debtors.

**1.33** "<u>Equity Interest</u>" shall mean the IFEC Holdings Equity Interests, the IFEC LP Equity Interests and the FXC Equity Interests, respectively.

**1.34** "<u>Estate</u>" shall mean each of the IFEC Holdings Estate, the IFEC LP Estate and the FXC Estate.

**1.35** "<u>Executory Contract</u>" shall mean a contract to which any Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.36** "<u>FXC</u>" shall mean FX Concepts, LLC.

**1.37** "<u>FXC Assets</u>" shall mean FXC's interest in all property constituting property of the FXC Estate pursuant to 11 U.S.C. §541.

**1.38** "<u>FXC Equity Interest</u>" shall mean the interest of any holder of any voting or non-voting membership or equity of FXC, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire at any time such equity, all of which are held by IFEC LP.

**1.39** "<u>FXC Estate</u>" shall mean the estate created by the Bankruptcy Case of FXC pursuant to Section 541 of the Bankruptcy Code.

**1.40** "<u>FXC General Unsecured Claim</u>" shall mean a Claim against FXC that is: (a) not an Administrative Expense Claim; (b) not a Secured Claim, (c) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (d) not an FXC Equity Interest.

**1.41** "<u>General Unsecured Claim</u>" shall mean the IFEC Holdings General Unsecured Claims, the IFEC LP General Unsecured Claims and the FXC General Unsecured Claims.

**1.42** "<u>IFEC Holdings</u>" shall mean International Foreign Exchange Concepts Holdings, Inc.

**1.43** "<u>IFEC Holdings Assets</u>" shall mean IFEC Holdings' interest in all property constituting property of the IFEC Holdings Estate pursuant to 11 U.S.C. §541.

**1.44** "<u>IFEC Holdings Equity Interest</u>" shall mean the interest of any holder of any voting or non-voting equity interest of IFEC Holdings, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire at any time such equity.

**1.45** "IFEC Holdings Estate" shall mean the estate created by the IFEC Holdings Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.46** "IFEC Holdings General Unsecured Claim" shall mean a Claim against IFEC Holdings that is: (a) not an Administrative Expense Claim; (b) not a Secured Claim, (c) not entitled to priority of payment under Section 507 of the Bankruptcy Code, (d) not an AMF Claim, and (e) not an IFEC Holdings Equity Interest.

**1.47** "IFEC LP" shall mean International Foreign Exchange Concepts, L.P.

**1.48** "IFEC LP Assets" shall mean IFEC LP's interest in all property constituting property of the IFEC LP Estate pursuant to 11 U.S.C. §541.

**1.49** "IFEC LP Equity Interest" shall mean the interest of any holder of any voting or non-voting equity or partnership interest of IFEC LP, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire at any time such equity.

**1.50** "IFEC LP Estate" shall mean the estate created by the IFEC LP Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.51** "IFEC LP General Unsecured Claim" shall mean a Claim against IFEC LP that is: (a) not an Administrative Expense Claim; (b) not a Secured Claim, (c) not entitled to priority of payment under Section 507 of the Bankruptcy Code, (d) not an AMF Claim, and (e) not an IFEC LP Equity Interest.

**1.52** "Impaired" shall mean, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.53** "Intercompany Claim" shall mean any Claim against a Debtor by a direct or indirect subsidiary, a direct or indirect parent, or an Affiliate (other than an individual) of any of the Debtors.

**1.54** "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) all Liens shall be discharged as of the Effective Date unless specifically preserved under the Plan.

**1.55** "Liquidating Trust" shall mean the Liquidating Trust of IFEC Holdings, IFEC LP and FXC established pursuant to the Liquidating Trust Agreement.

**1.56** "Liquidating Trust Agreement" shall mean the Liquidating Trust Agreement of IFEC Holdings, IFEC LP and FXC in the form substantially similar to that annexed hereto as **Exhibit B**.

**1.57** "Liquidating Trustee" shall mean Michael Meenan of CDG Group, LLC, or his successor as set forth in Article VII of this Plan.

**1.58** "Net Proceeds" shall mean the amount of Assets available for distribution after reduction for the costs and expenses incurred in selling, transferring, and/or liquidating such Assets, including, without limitation, reserves established pursuant to this Plan for professional fees and expenses incurred after the Effective Date, broker's commissions, taxes (including capital gains taxes), closing costs, and the Trust Reserve.

**1.59** "Non-Appealable Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal, seek leave to appeal or certiorari, or request re-argument, review or rehearing has expired and as to which no appeal, petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been timely filed, or (b) any appeal, petition for leave to appeal or certiorari, re-argument, review, or rehearing that has been or may be made has been resolved by the highest court to which the order or judgment was appealed, from which leave to appeal or certiorari was sought, or to which the request was made, and no further appeal or petition for leave to appeal or certiorari, or request for re-argument, review or rehearing has been or can be taken or granted, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Non-Appealable Order.

**1.60** "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.61** "Permitted Investment" shall mean Cash Equivalents having maturities sufficient to enable the Liquidating Trustee to make the payments required under the Plan.

**1.62** "Petition Date" shall mean October 17, 2013 with respect to IFEC Holdings and IFEC LP and October 23, 2013 with respect to FXC.

**1.63** "Plan" shall mean this *Chapter 11 Liquidating Plan of International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P. and FX Concepts, LLC,* including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.64** "Plan Interest Rate" shall mean the simple interest rate of 5% per annum.

**1.65** "Priority Claims" shall mean any Claims against a Debtor, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.66** "Priority Tax Claims" shall mean any Claim against a Debtor of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.67**   "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**1.68**   "Professional Fee Claims" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

**1.69**   "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by each Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.70**   "Secured Claim" shall mean any Claim against a Debtor that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.71**   "Trust Reserve" shall mean the reserve established by the Liquidating Trustee in consultation with AMF pursuant to the Plan, which reserve shall include cash in an amount determined by the Liquidating Trustee from time to time to be reasonably sufficient to satisfy all obligations of the Liquidating Trust in accordance with the terms of this Plan.

**1.72**   "Unexpired Lease" shall mean a lease to which any Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.73**   "Unimpaired" shall mean a Claim or Equity Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

## ARTICLE II.

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

### 2.1   Non-Classification

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtors are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

### 2.2   Administrative Expense and Statutory Claims

A.   _General._ On, or as soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (iii) the date on which an Allowed Administrative Expense Claim becomes payable under any agreement or applicable law relating thereto, each holder of

8

such Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim. Notwithstanding the foregoing, (y) any Allowed Administrative Expense Claim based on a liability incurred by any Debtor in the ordinary course of business during the Bankruptcy Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Expense Claim may be paid when payable under applicable law or on such other terms as may be agreed to between the holder of such Claim and the Liquidating Trustee.

        B.    <u>U.S. Trustee's Fees</u>. The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

        C.    <u>Professional Compensation and Expense Reimbursement Claims</u>.

        (i)    Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

        (ii)    Any Allowed Professional Fee Claim shall receive: (i) payment upon entry of a Non-Appealable Order approving such Claim, or (ii) payment as agreed between the holder of the Allowed Administrative Expense Claim and the Liquidating Trustee.

        (iii)    All fees and expenses of Professionals for services rendered after the Effective Date shall be paid by the Liquidating Trustee upon the receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Liquidating Trustee agree. No further order or authorization from the Bankruptcy Court shall be necessary to permit the payment of the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3**    **Priority Tax Claims**

    On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim, (i) payment in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, or (ii) payment as agreed between the holder of the Allowed Priority Tax Claim and the Liquidating Trustee.

**ARTICLE III.**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

    The Claims against and Equity Interests in the Debtors are categorized below for all purposes under the Plan including voting, Confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a

particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.

### 3.1    Claim and Equity Interest Categories

Claims against and Equity Interests in the Debtors have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Priority Claims | Unimpaired | No |
| 2 | Secured Claims | Unimpaired | No |
| 3A | General Unsecured Claims Against IFEC Holdings | Impaired | Yes |
| 3B | General Unsecured Claims Against IFEC LP | Impaired | Yes |
| 3C | General Unsecured Claims Against FXC | Unimpaired | No |
| 3D | AMF Claims against IFEC Holdings and IFEC LP | Impaired | Yes |
| 4A | Equity Interests in IFEC Holdings | Impaired | No |
| 4B | Partnership Interests in IFEC LP | Impaired | No |
| 4C | Membership Interests in FXC | Impaired | Yes |

# ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    Class 1 – Priority Claims

A.    Classification.  Class 1 consists of the Allowed Priority Claims.

B.    Impairment and Voting.  The Priority Claims are unimpaired under the Plan and shall be deemed to have accepted the Plan.

C.    Claim Treatment.  In full and complete satisfaction, settlement, and release of the Allowed Priority Claims, the holders of Allowed Class 1 Claims shall be paid in full upon the later of the Effective Date or entry of an order of the Bankruptcy Court allowing such Claim.

### 4.2    Class 2 –Secured Claims

A.    <u>Classification</u>. Class 2 consists of the Allowed Secured Claims.

B.    <u>Impairment and Voting</u>. The Secured Claims are unimpaired under the Plan and shall be deemed to have accepted the Plan.

C.    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of the Allowed Secured Claims, each holder of an Allowed Class 2 Claim shall receive, at the Debtors' election, either (i) cash equal to the allowed amount of such Secured Claim upon, or as soon as reasonably practicable after, the later of the Effective Date or entry of an order of the Bankruptcy Court allowing such Claim, or (ii) a return of the underlying collateral securing such Claim.

### 4.3    Class 3A – IFEC Holdings General Unsecured Claims

A.    <u>Classification</u>. Class 3A consists of the Allowed IFEC Holdings General Unsecured Claims.

B.    <u>Impairment and Voting</u>. The IFEC Holdings General Unsecured Claims are impaired under the Plan. Each holder of an IFEC Holdings General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

C.    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of their respective Allowed IFEC Holdings General Unsecured Claims, each holder of an Allowed IFEC Holdings General Unsecured Claim (other than an Intercompany Claim) shall receive a cash payment equal to 10% (ten percent) of its Allowed IFEC Holdings General Unsecured Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) five business days after such Claim becomes an Allowed IFEC Holdings General Unsecured Claim. On or as soon as reasonably practicable after the Effective Date, Intercompany Claims against IFEC Holdings shall be adjusted, cancelled, continued, waived, or discharged in full or in part, in each case as determined by the Liquidating Trustee. Intercompany Claims against IFEC Holdings will not be entitled to a distribution under this Plan.

### 4.4    Class 3B – IFEC LP General Unsecured Claims

A.    <u>Classification</u>. Class 3B consists of the Allowed IFEC LP General Unsecured Claims.

B.    <u>Impairment and Voting</u>. The IFEC LP General Unsecured Claims are impaired under the Plan. Each holder of an IFEC LP General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

C.    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of their respective Allowed IFEC LP General Unsecured Claims, each holder of an Allowed IFEC LP General Unsecured Claim (other than an Intercompany Claim) shall receive a cash payment equal to 50% (fifty percent) of its Allowed IFEC LP General Unsecured Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) five business

days after such Claim becomes an Allowed IFEC LP General Unsecured Claim. On or as soon as reasonably practicable after the Effective Date, Intercompany Claims against IFEC LP shall be adjusted, cancelled, continued, waived, or discharged in full or in part, in each case as determined by the Liquidating Trustee. Intercompany Claims against IFEC LP will not be entitled to a distribution under this Plan.

**4.5    Class 3C – FXC General Unsecured Claims**

A.    <u>Classification</u>. Class 3C consists of the Allowed FXC General Unsecured Claims.

B.    <u>Impairment and Voting</u>. The FXC General Unsecured Claims are unimpaired under the Plan. Each holder of a FXC General Unsecured Claim shall be conclusively deemed to have accepted the Plan.

C.    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of their respective Allowed FXC General Unsecured Claims, each holder of an Allowed FXC General Unsecured Claim shall receive, on, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) five business days after the date on which such Claim becomes an Allowed FXC General Unsecured Claim, (1) cash in an amount equal to its Allowed FXC General Unsecured Claim, and (2) interest on account of such FXC General Unsecured Claim at the Plan Interest Rate, calculated from the Petition Date through the date upon which such Allowed FXC General Unsecured Claim is paid.

**4.6    Class 3D – AMF Claims**

A.    <u>Classification</u>. Class 3D consists of the Allowed AMF Claims.

B.    <u>Impairment and Voting</u>. The AMF Claims are impaired under the Plan. AMF, as the holder of the AMF Claim, shall be entitled to vote to accept or reject the Plan.

C.    <u>Claim Allowance</u>. The AMF Claim shall be consolidated and allowed as a single general unsecured claim against each of IFEC Holdings and IFEC LP in the amount of $26,685,368.

D.    <u>Claim Treatment</u>. In full and complete satisfaction, settlement, and release of its Allowed AMF Claim, the Net Proceeds of the IFEC Holdings Assets and the IFEC LP Assets, after payment or reserve for payment of any Allowed Administrative Expense Claims allocable to IFEC Holdings and IFEC LP, Priority Claims allocable to IFEC Holdings and IFEC LP, Priority Tax Claims allocable to IFEC Holdings and IFEC LP, IFEC Holdings General Unsecured Claims, and IFEC LP General Unsecured Claims to the extent set forth in Sections 4.3 and 4.4, respectively, of this Plan, shall be distributed to AMF.

**4.7    Class 4A – IFEC Holdings Equity Interests**

A.    <u>Classification</u>. Class 4A consists of all IFEC Holdings Equity Interests.

12

B.    _Impairment and Voting_.  Class 4A is impaired under the Plan.  Each holder of an IFEC Holdings Equity Interest shall be conclusively deemed to have rejected the Plan.

C.    _Treatment_.  IFEC Holdings Equity Interests shall be deemed canceled and terminated as of the Effective Date, and the holders of IFEC Holdings Equity Interests shall not receive or retain any property or interest in property on account of such Equity Interest.

### 4.8    Class 4B – IFEC LP Equity Interests

A.    _Classification_.  Class 4B consists of all IFEC LP Equity Interests.

B.    _Impairment and Voting_.  Class 4B is impaired under the Plan.  Each holder of an IFEC LP Equity Interest shall be conclusively deemed to have rejected the Plan.

C.    _Treatment_.  IFEC LP Equity Interests shall be deemed canceled and terminated as of the Effective Date, and the holders of IFEC LP Equity Interests shall not receive or retain any property or interest in property on account of such Equity Interest.

### 4.9    Class 4C – FXC Equity Interests

A.    _Classification_.  Class 4C consists of all FXC Equity Interests.

B.    _Impairment and Voting_.  Class 4C is impaired under the Plan.  The holder of the FXC Equity Interest shall be entitled to vote to accept or reject the Plan.  Because IFEC LP is the only holder of an FXC Equity Interest, and is a proponent hereof, IFEC LP shall be deemed to have voted to accept the Plan, and Class 4C shall be deemed to have voted to accept the Plan as a Class.

C.    _Claim Treatment_.  In full and complete satisfaction, settlement, and release of the FXC Equity Interests, the Net Proceeds of the FXC Assets, after payment or reserve for payment of any Allowed Administrative Expense Claims allocable to FXC, Priority Claims allocable to FXC, Priority Tax Claims allocable to FXC, and Allowed FXC General Unsecured Claims, will be distributed to IFEC LP as the sole equity holder of FXC, and shall be deemed "Proceeds" of the IFEC LP Assets hereunder.

### 4.10    Reservation of Rights

The Debtors reserve the right to, among other things, contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim.  The Liquidating Trustee reserves the right to, among other things, (a) contest the right of the holder of any Claim or Equity Interest to receive distributions under the Plan and (b) seek to subordinate any Claim for inequitable conduct or otherwise.

### 4.11    Special Provision Regarding Unimpaired Claims

Except as otherwise provided in this Plan, nothing shall affect the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including

but not limited to, all rights with respect to legal and equitable defenses to, setoffs against, or recoupments of Unimpaired Claims.

### 4.12    Voting of Claims

Each holder of an Allowed Claim in an Impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan. Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

For the avoidance of doubt, IFEC LP will be deemed to vote in favor of the Plan on account of the FXC Equity Interests. As a result, Class 4C shall conclusively be deemed to have voted to accept the Plan.

### 4.13    Acceptance by Impaired Classes

An Impaired class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### 4.14    Elimination of Classes

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under Section 1129(a)(8) of the Bankruptcy Code.

### 4.15    Nonconsensual Confirmation

If any Impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) of the Bankruptcy Code, as applicable, or if any Impaired class is deemed to have rejected the Plan, the Debtors reserve the right (a) to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1    Plan Implementation

On the Effective Date, the Liquidating Trust shall be established and all of the Assets that have not been distributed by the Estate in accordance with the terms of the Plan shall vest in the

Liquidating Trust, free and clear of all Claims, Liens, and encumbrances, but subject to the payment of the Claims as provided under the Plan.

### 5.2    Corporate Action

Confirmation of the Plan shall constitute authorization for the Debtors and the Liquidating Trustee to effectuate the Plan and to execute, issue, deliver, file or record all contracts, instruments and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan without further notice to or action, order or approval of the Bankruptcy Court or any other entity except for those expressly required pursuant to this Plan.  All matters provided for in the Plan involving any corporate action to be taken by or required of the Debtors in connection with the Plan shall be deemed to have occurred, and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects, without any requirement of further action by the Debtors, their agents, representatives, stockholders, members, managers, officers, directors or Affiliates.

### 5.3    Vesting of Property

All property of the Estates that has not been distributed in accordance with the terms of the Plan shall vest in the Liquidating Trust on the Effective Date free and clear of all Claims, Liens, and Encumbrances, but subject to payment of the Claims as provided under the Plan. Except as may be expressly provided in the Plan or in a Non-Appealable Order of the Bankruptcy Court, no Asset of any Estate shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of any Debtor shall be deemed waived, released or compromised.

### 5.4    Preservation of Causes of Action

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Non-Appealable Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Liquidating Trust will exclusively retain and may enforce, and the Liquidating Trustee expressly reserves and preserves for these purposes, in accordance with Sections 1123(a)(5)(A) and 1123(b)(3) of the Bankruptcy Code, any Claims, Causes of Action and demands and rights relating thereto that any Debtor or its Estate may hold against any Person or entity. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan.  Without limiting the forgoing, the Debtors expressly reserve and preserve those causes of action identified on **Exhibit A** hereto.

### 5.5    Default

No event of default under the Plan shall occur unless, in the event of a breach of the Liquidating Trustee's obligations under the Plan, the holder of the Allowed Claim or Equity Interest asserting the default shall provide written notice of such breach to the Liquidating Trustee and such breach is not cured: (i) in the event of a breach that can be cured by the

payment of a sum of money, within ten (10) days of the Liquidating Trustee's receipt of such notice; and (ii) for any other breach, within thirty (30) days of the Liquidating Trustee's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Liquidating Trustee has commenced curing such breach and continues to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

### 5.6    Dissolution of the Debtors

On the Effective Date and upon the vesting of the Assets in the Liquidating Trust, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan and each of the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further action to be taken by or on behalf of any Debtor. The Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal and (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after such dissolution. The dissolution of the Debtors shall not and shall not be deemed to impair, prejudice, or diminish the Liquidating Trust's rights under the Plan.

### 5.7    Resignation of Officers and Directors

Upon the Effective Date, any of the Debtors' remaining officers and members of their respective boards of directors and managers shall be deemed to have resigned, if they have not already done so, without the necessity of any further action or writing and they shall be released from any responsibilities, duties and obligations that arise after the Effective Date to the Debtors or their creditors under the Plan or applicable law.

### 5.8    Further Authorization

The Liquidating Trustee, on behalf of the Liquidating Trust and the Debtors, shall be entitled to seek such orders, judgments, injunctions, and rulings as he deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

### 5.9    Final Decree

It shall be the exclusive duty of the Liquidating Trustee to prepare and file a motion requesting that the Court enter a Final Decree closing the Bankruptcy Cases.

## ARTICLE VI.

## DISTRIBUTIONS ON CLAIMS AND EQUITY INTERESTS AND RESOLUTION OF DISPUTED CLAIMS

### 6.1    Method of Distributions Under the Plan

A.    <u>In General</u>.  Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Liquidating Trustee to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Liquidating Trustee has been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The Liquidating Trustee shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

B.    <u>Form of Distributions</u>.  Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Liquidating Trustee pursuant to the Plan shall be made by check.

C.    <u>Distributions to be on Business Days</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

D.    <u>Fractional Dollars</u>.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

E.    <u>Interest and Penalties on Claims</u>.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

F.    <u>Distributions to Holders as of the Distribution Record Date</u>.  The Liquidating Trustee shall be entitled to rely upon the register of Claims as of the Distribution Record Date.  Any transfers of an Allowed Claim shall be recognized ten (10) days after written notice of such transfer is received by the Liquidating Trustee as provided herein.

### 6.2    Objections to Disputed Claims

Prior to the Effective Date, any objections to Claims against any Debtor shall be prosecuted by the Debtors.  On and after the Effective Date, any objections to Claims against any Debtor shall be prosecuted by the Liquidating Trustee.

**6.3     Deadline for Objecting to Disputed Claims**

Except as otherwise provided by order of the Bankruptcy Court, the Liquidating Trustee may file an objection to a Claim against any Debtor until the later of: (a) thirty days after the date that such Claim becomes due and payable in accordance with its terms, or (b) 120 days after the Effective Date.

**6.4     Estimation of Claims**

After the Effective Date, the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Liquidating Trustee from pursuing any supplemental proceedings to object to any payment of such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**6.5     Disputed Claims Reserve**

A.     Establishment. The Disputed Claims Reserve shall be established by the Liquidating Trustee on the Effective Date and shall be maintained in accordance with the terms of this Plan and the Liquidating Trust Agreement.

B.     Investment of Cash. Cash in the Disputed Claims Reserve may be invested only in Cash Equivalents having maturities sufficient to enable the holder of the Disputed Claim Reserve to make all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents in the Disputed Claims Reserve shall be for the sole benefit and account of the Liquidating Trust, and the Liquidating Trust shall be solely responsible for the payment of any income or other taxes arising therefrom.

C.     Distributions Upon Allowance of Disputed Claims. The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve on or after the Payment Date as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No holder of a Disputed Claim shall have any claim against the respective Disputed Claims Reserve

or the Liquidating Trust with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

### 6.6    Reversion of Unclaimed Checks

If a check remains unclaimed for a period of one hundred eighty (180) days after distribution, the party otherwise entitled to such distribution shall be deemed to have forfeited its right to the distribution and any future distributions, and the Liquidating Trustee may redistribute the Cash to other beneficiaries under the Plan as if such Claim or Equity Interest was disallowed.

## ARTICLE VII.

## LIQUIDATING TRUSTEE

### 7.1    Appointment of Liquidating Trustee; Approval of Liquidating Trust Agreement; Vesting of Estate Powers

As of the Effective Date, Michael Meenan of CDG Group LLC shall be the Liquidating Trustee and the Liquidating Trust Agreement shall be deemed approved in all respects. As of the Effective Date, the Debtors shall be authorized to enter into the Liquidating Trust Agreement, and to take all other and further steps as necessary to effectuate the transactions contemplated in this Plan, including but not limited to the establishment of the Trust Reserve. Upon the Effective Date, the Liquidating Trustee shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code with respect to all Assets and rights belonging to the Estates, including, without limitation the standing and authority to commence, prosecute and compromise objections to Claims and Causes of Action, whether initially filed by the Debtors or as may be filed by the Liquidating Trustee, but exclusive of the rights of a trustee to make a claim under Section 326 of the Bankruptcy Code for compensation (the Liquidating Trustee's compensation being subject to the provisions of this Plan). The Liquidating Trustee shall stand in the same position as the Debtors and/or the Estates with respect to any claim the Debtors and/or the Estates may have had to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Liquidating Trustee shall succeed to all of the Debtors' and/or the Estates' rights to preserve, assert or waive any such privilege.

### 7.2    Liquidating Trustee's Rights and Powers

The Liquidating Trustee's rights and powers shall include the following:

(a)    Sell at public or private sale, or exchange, transfer, or convey, on such terms and conditions, and at such time or times as the Liquidating Trustee shall determine, any or all of the Assets (whether tangible or intangible); to that end, grant options, make contracts, retain brokers, and sign, seal, acknowledge, and deliver any and all proper deeds, or other instruments of conveyance or transfer thereof; and delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, transfer, or exchange of any such property;

19

(b)    Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Trustee's duties under the Liquidating Trust Agreement and under the Plan;

(c)    Subject to any limitations contained in the Plan and the Liquidating Trust Agreement, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims, including claims described in the Plan, other matters, or taxes;

(d)    Pay all taxes, expenses and obligations of the Liquidating Trust out of the Assets;

(e)    Investigate, prosecute and, if necessary, litigate, any and all Avoidance Actions and Causes of Action that may belong to any Debtor or its Estate, including any Avoidance Action brought by the Debtors prior to the Effective Date, which Causes of Action, rights to payment and claims as of the Effective Date shall vest solely and exclusively in the Liquidating Trustee, for the benefit of the Liquidating Trust, pursuant to the terms of the Plan;

(f)    (i) Invest funds; (ii) make distributions; (iii) pay taxes and other obligations owed by the Liquidating Trust or incurred by the Liquidating Trustee or the Debtors; (iv) engage and compensate from the Assets, consultants, agents, employees, and Professionals (including, without limitation, attorneys on a contingency fee basis) to assist the Liquidating Trustee with respect to the Liquidating Trust's responsibilities (including without limitation advisors to value the Assets); (v) retain and compensate from the Assets the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Assets; (vi) liquidate and dispose of the Assets; (vii) compromise and settle Claims and Causes of Actions; (viii) act on behalf of the Debtors and their Estates in all adversary proceedings and contested matters (including, without limitation, the Avoidance Actions) pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; (ix) commence and/or pursue any and all actions involving Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan; (x) utilize Assets to purchase appropriate insurance to insure the acts and omissions of the Liquidating Trustee; and (xi) act and implement the Plan and orders of the Bankruptcy Court;

(g)    Wind up, dissolve, or otherwise provide for the dissolution and termination of any subsidiary or affiliate of any of the Debtors, including the payment of costs, claims or expenses associated therewith; and

(h)    Employ Persons to assist in the orderly liquidation of Assets, including, without limitation, attorneys on a contingency basis.

## 7.3    Selection of Agents

The Liquidating Trustee may retain his or her firm or company to provide professional services in conjunction with his duties under this Plan or the Liquidating Trust Agreement.  The Liquidating Trustee shall not be liable for any loss to the Liquidating Trust or any person with an interest in the Liquidating Trust by reason of any mistake or default of any such agent or

consultant unless such mistake or default breaches the standard of care set forth in Section 7.5(a) of this Plan.

### 7.4    Maintenance of Register

The Liquidating Trustee shall at all times maintain a register of the names, addresses, and amount of the Claims against the Liquidating Trust as of the Effective Date and as revised from time to time thereafter.

### 7.5    Liability of Liquidating Trustee

A.    <u>Standard of Care</u>.  The Liquidating Trustee shall not be liable for any action taken or omitted to be taken by him in good faith and in the exercise of reasonable judgment and believed to be within the discretion or power conferred by this Plan, or be responsible for the consequences of any act or failure to act, except for gross negligence or willful misconduct.  The Liquidating Trustee shall not have any fiduciary relationship with any party by virtue of this Plan except as specifically set forth in this Plan or the Liquidating Trust Agreement:

(i)    The Liquidating Trustee shall not, solely by virtue of his position as Liquidating Trustee, be liable or in any way responsible for the acts or omissions of any Debtor, its respective board of directors, officers, employees, or agents, that occurred prior to the Effective Date.

(ii)    Unless indemnified to his satisfaction against liability and expense, the Liquidating Trustee shall not be compelled to do any act or to take any action with respect to the execution or enforcement of the powers created under this Plan or to prosecute or defend any suit in respect of this Plan.  If the Liquidating Trustee requests approval from the Bankruptcy Court with respect to any act or action in connection with this Plan, the Liquidating Trustee shall be entitled (but shall not be required) to refrain from such act or action (without incurring any liability to any person by so refraining) unless and until he has received Court instructions or approval from the Court.  In no event shall the Liquidating Trustee or any of his representatives be required to take any action which he reasonably determines could lead to criminal or civil liability.

(iii)    The Liquidating Trustee shall not be responsible in any manner to the Debtors, their Estate, any holder of a Claim or Equity Interest, or any party-in-interest for:

(A)    the creditworthiness of any party and the risks involved to the Liquidating Trust or such holder or party-in-interest;

(B)    the effectiveness, enforceability, genuineness, validity, or any due execution of this Plan as to any person other than the Liquidating Trustee;

21

(C)     any representation, warranty, document, certificate, report, or statement made herein or furnished hereunder or in connection with this Plan that does not constitute a breach of the standard of care set forth in Section 7.5(a) of this Plan on the part of the Liquidating Trustee;

(D)     the existence, priority or perfection of any existing Lien;

(E)     the observation or compliance with any of the terms, covenants, or conditions of this Plan on the part of any party thereto other than the Liquidating Trustee;

(F)     any loss to the Liquidating Trust resulting from the investment of the Assets, or their proceeds, in any Permitted Investments;

(G)     any loss or claim arising from the windup, dissolution, or termination of any subsidiary of the Debtors pursuant to Section 7.2(g) hereof; or

(H)     losses to any retirement, employee benefit, or pension plan of the Debtors in excess of the amounts available to be distributed from such plans.

The Debtors, holders of Claims or Equity Interests and parties-in-interest, by voting for this Plan and/or accepting the benefits of this Plan, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Trustee except for actions or omissions which violate the standard of care set forth in Section 7.5(a) of this Plan.

B.     No Liability for Acts of Predecessor.  No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any preceding Liquidating Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility.  Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Trustee by any preceding Liquidating Trustee and shall be responsible only for those Assets included in such statement.

C.     No Implied Obligations.  The Liquidating Trustee's liability shall be limited to the performance of such duties and obligations as are specifically set forth in this Plan or in the Liquidating Trust Agreement.  The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties in this Plan, in the Disclosure Statement or in any documents or instrument evidencing or otherwise constituting a part of the Assets.  The Liquidating Trustee makes no representations as to the value of the Assets.

D.     Reliance by Liquidating Trustee on Documents or Advice of Counsel or Other persons.  The Liquidating Trustee may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information

therein contained) which the Liquidating Trustee believes to be genuine and to be signed or presented by the proper persons. Subject to his obligation to meet the standard of care in Section 7.5(a), the Liquidating Trustee shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

E.    No Personal Obligation for the Debtors' Liabilities. Holders of Claims and Equity Interests, and other persons transacting business with the Liquidating Trustee in his capacity as Liquidating Trustee, shall be limited to the Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Plan, and the Liquidating Trustee shall have no personal obligation to satisfy any such liability.

### 7.6    Reports; Tax Returns

The Liquidating Trustee shall prepare and submit any and all reports required under the Plan and as may be further ordered by the Bankruptcy Court. After the Effective Date, the Liquidating Trustee shall be responsible for the filing of any and all federal and state tax returns required by law to be filed by the Liquidating Trust, including the final tax returns, and shall pay from the Assets all tax liabilities arising from such tax returns. The Liquidating Trustee shall also be authorized to file any tax returns required to be filed by the Debtors.

### 7.7    Trust Reserve

The Liquidating Trustee shall establish the Trust Reserve, in an amount to be determined by the Liquidating Trustee in consultation with AMF, for the payment by the Liquidating Trustee of all expenses of the Liquidating Trust, including, without limitation, the compensation of the Liquidating Trustee, compensation of the professionals retained by the Liquidating Trustee, and the payment of all other reasonable and reasonably anticipated expenses, debts, charges, liabilities and obligations relating to the Liquidating Trust and its administration, including, without limitation, any tax owed by the Debtors or the Liquidating Trust. Any balance remaining in the Trust Reserve after the payment (as determined by the Liquidating Trustee) of all expenses, debts, charges, liabilities and obligations intended to be paid therefrom shall become available for distribution in accordance with this Plan.

### 7.8    Compensation of Liquidating Trustee and his Agents

The Liquidating Trustee's compensation shall be based upon daily rates typically charged in the conduct of the Liquidating Trustee's business and may be paid from the Trust Reserve and the Assets on a monthly basis without further notice or order of the Bankruptcy Court. Agents retained by the Liquidating Trustee, including Professionals, may submit monthly statements to the Liquidating Trustee describing with reasonable particularity the amount of fees and expenses sought, the time expended, and the nature, extent, and value of the services provided during the period covered by such request. In the absence of objection by the Liquidating Trustee, such fees and expenses shall be paid within thirty (30) days of issuance of the monthly statement without further notice or order of the Bankruptcy Court. The Liquidating Trustee may retain, compensate, employ and pay agents and Professionals on other terms, including payment on a contingency basis and the provision of appropriate indemnification by the Liquidating Trust, without need for notice or any order of the Bankruptcy Court. In the event of any objection to a

compensation request, the Bankruptcy Court shall retain jurisdiction to hear and determine such dispute. Payment of fees and reasonable out-of-pocket expenses of the Liquidating Trustee and any agents or consultants employed pursuant to this Plan shall be reimbursed as a priority from the Trust Reserve and, if necessary, the Assets.

### 7.9    Liquidating Trustee's Indemnification

The Liquidating Trustee shall be indemnified by, held harmless, and receive reimbursement from the Assets for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred, except in the event that a court of competent jurisdiction determines that such losses or claims were the result of a breach of the standard of care set forth in Section 7.5(a) of this Plan.

### 7.10    Removal of Liquidating Trustee

The Liquidating Trustee may be removed only for cause upon a motion to the Bankruptcy Court. If the Liquidating Trustee is removed for cause, the Liquidating Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation. The term "cause" shall mean: (a) the Liquidating Trustee's gross negligence or willful failure to perform his duties under this Plan, (b) the Liquidating Trustee's misappropriation or embezzlement of any Assets or the proceeds of the Assets, or (c) the Liquidating Trustee's continued or repeated negligence or failure to perform his duties under this Plan. If a Liquidating Trustee is removed or is unwilling or unable to serve by virtue of his inability to perform his duties due to death, illness, or other physical or mental disability, following the liquidation of all or substantially all of the Assets, or for any other reason whatsoever, subject to a final accounting, such Liquidating Trustee shall be entitled to receive all accrued and unpaid fees, reimbursement of expenses, and other compensation incurred before his removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

### 7.11    Resignation of Liquidating Trustee

A Liquidating Trustee may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified by the Court. If a Liquidating Trustee resigns from his position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to receive all accrued unpaid fees, reimbursement of expenses, and other compensation incurred before his resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

### 7.12    Successor Liquidating Trustee

In the event that a Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee may be appointed by AMF, subject to approval by the Bankruptcy Court, or by order of the Bankruptcy Court after notice and a hearing.

24

### 7.13    Third Parties

Except as set forth in this Plan, there is no obligation on the part of any party transacting business with the Liquidating Trustee or any agent of the Liquidating Trustee to: (a) inquire into the validity, expediency, or propriety of any transaction, (b) inquire into the authority of the Liquidating Trustee, or any agent of the Liquidating Trustee, to enter into or consummate the transaction, or (c) to monitor the application of the purchase money or other consideration paid or delivered to the Liquidating Trust.

### 7.14    Bond and Insurance Requirements

On the Effective Date, or immediately thereafter, the Liquidating Trustee shall procure a bond in an amount equal to undistributed Cash on hand as of the Effective Date. The bond shall be written by an insurance company authorized to do business in the State of New York and written on a standard and customary bond form. The Liquidating Trustee may adjust the amount of the Bond in his business judgment; provided that, in no event shall the amount of the bond be less than the amount of undistributed Cash on hand. No bond shall be required if and when the value of the Assets shall be less than $200,000.00.

## ARTICLE VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1    Rejection of Executory Contracts and Unexpired Leases

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any Executory Contract or Unexpired Lease (excluding insurance policies) that (a) has not expired by its own terms on or prior to the Confirmation Date, (b) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (c) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (d) is not designated by the Debtors as being an Executory Contract or Unexpired Lease to be assumed at the time of Confirmation of the Plan, shall be deemed rejected on the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court shall constitute the approval of the rejection of Executory Contracts and Unexpired Leases pursuant to this Section of the Plan and Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### 8.2    Rejection Damage Claims

If the rejection of an Executory Contract or Unexpired Lease by the Debtors pursuant to the Confirmation Order results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Liquidating Trust and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon the Liquidating Trustee on or before thirty (30) days following the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as a General Unsecured Claim against the relevant Debtor subject to the provisions of the Plan. The Liquidating Trustee

shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

## ARTICLE IX.

## RELEASE AND SATISFACTION OF CLAIMS

### 9.1    Compromise and Settlement of Claims, Interest and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estate and holders of Claims and Equity Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against them and Causes of Action against other Persons.

### 9.2    Release of Claims and Termination of Equity Interests

Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, and release, effective as of the Effective Date, of all Claims, Equity Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, any Debtor, the Assets, and the Liquidating Trust, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed before or on account of the filing of the Bankruptcy Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the release of all Claims and Equity Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

### 9.3    Injunction Relating to the Plan

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against any Debtor, its Estate, the Liquidating Trust, the Assets, and/or the Liquidating Trustee, on account of, or respecting any Claims, Equity Interests, debts, rights, obligations, Causes of Action or liabilities that are released, terminated, or exculpated pursuant to the Plan, except to the extent expressly permitted under the Plan.

### 9.4    Releases by the Debtors

Pursuant to Section 1123(b) of the Bankruptcy Code and to the extent allowed by applicable law, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Debtor Released Parties to facilitate the expeditious liquidation of the Debtors, on and after the Effective Date, the Debtor Released Parties are deemed released and discharged by the Debtors, the Liquidating Trust, and each Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Debtor, the Liquidating Trust, any Estate or any of their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Bankruptcy Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Debtor Released Party, the restructuring of Claims and Equity Interests before or during the Bankruptcy Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Debtor Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor Released Party reasonably believed to be in the best interests of the Debtors (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence.

### 9.5    Releases of Debtors by Holders of Claims

Except as otherwise set forth in the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (a) each holder of a Claim that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or at any time was a creditor of any Debtor and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release and waive all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Liquidating Trustee's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Bankruptcy Cases or the Plan that such entity has, had or may have against any Debtor, any Estate, the Assets, or the Liquidating Trust.

### 9.6    Releases of Third Parties by Holders of Claims

Except as otherwise set forth in the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim that votes in favor of the Plan will be deemed to forever release and waive all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estate, the Bankruptcy Cases or the Plan that such entity has, had or may have against the Debtor Released Parties.

### 9.7    Cancellation of Existing Indebtedness and Liens

Except as may otherwise be provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against any Debtor, together with any and all Liens securing same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of any Debtor thereunder shall be deemed cancelled and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any collateral thereunder, will revert to the Liquidating Trust. To the extent deemed necessary or advisable by the Liquidating Trustee, any holder of a Claim shall promptly provide the Liquidating Trustee with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

### 9.8    Exculpation

Except as otherwise set forth in the Plan, none of the Debtor Released Parties, shall have or incur, and each Debtor Released Party is hereby released and exculpated from, any liability to any holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns, for any act or omission, occurring prior to the Effective Date, in connection with, relating to, or arising out of, the administration of the Bankruptcy Cases, the Disclosure Statement, the formulation, negotiation, or implementation of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed

under the Plan, provided that the terms of this Section 9.8 shall not apply to any liability for willful misconduct or gross negligence.

### 9.9    Setoffs

Except as expressly provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

## ARTICLE X.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 10.1    Conditions Precedent to Confirmation

The following are conditions precedent to Confirmation of the Plan, each of which must be satisfied unless waived in accordance with Section 10.3 of this Plan:

(a)    The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under Section 1144 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtors, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code.

(b)    The Confirmation Order and the Plan, including any schedules, documents, supplements and exhibits thereto, shall be in form and substance reasonably acceptable to the Debtors.

### 10.2    Conditions Precedent to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date under the Plan, each of which must be satisfied unless waived in accordance with Section 10.3 of this Plan:

(a)    The Confirmation Order, in form and substance reasonably acceptable to the Debtors, shall have been entered by the Bankruptcy Court and shall have become a Non-Appealable Order.

(b)    All actions, documents and agreements necessary to implement the Plan shall be in form and substance reasonable acceptable to the Debtors and shall have been effected or executed and delivered to the required parties and, to the extent necessary, filed with the applicable governmental units in accordance with applicable laws.

### 10.3    Waiver of Conditions

The conditions to Confirmation of the Plan and to consummation of the Plan set forth in this Article X may be waived at any time by the Debtors; *provided, however,* that the Debtors may not waive entry of the order approving the Disclosure Statement and the Confirmation Order.

**10.4    Effect of Non-occurrence of Conditions to the Effective Date**

If the Effective Date does not occur by March 31, 2015, or such other date established by the Debtors, in consultation with AMF, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, any Debtor, or (b) prejudice in any manner the rights of the Debtors, or constitute an admission, acknowledgement, offer or undertaking by the Debtors.

## ARTICLE XI.

## RETENTION OF JURISDICTION

From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Cases and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all Professional Fee Claims, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of Executory Contracts and Unexpired Leases to which any Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)    To enforce and adjudicate the provisions of the Plan;

(e)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)    To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)    To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)    To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)    To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)    To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to Section 5.4 of the Plan; and

(n)    To enter an order and/or final decree concluding the Bankruptcy Cases.

## ARTICLE XII.

## MISCELLANEOUS

### 12.1    Continuation of Injunctions or Stays Until Effective Date

All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.2    Exemption from Transfer Taxes

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan including the vesting of the Assets in the Liquidating Trust, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be

subject to any document recording tax, stamp tax, conveyance fee or other similar tax, sales tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any such tax or governmental assessment.

### 12.3    Amendment or Modification of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtors or the Liquidating Trustee may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 12.4    Severability

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtors, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5    Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 12.6    Binding Effect

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 12.7    Notices

All notices, requests and demands to or upon the Debtors or the Liquidating Trustee shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

IFEC Liquidating Trust
c/o Michael Meenan, Liquidating Trustee
CDG Group
650 Fifth Avenue, 20th Floor
New York, NY 10019
Tel: (212) 813-1300

With a copy to:

Finn Dixon & Herling, LLP
177 Broad Street
Stamford, Connecticut 06901
Attn: Henry P. Baer, Jr., Esq.
Tel: (203) 325-5000

### 12.8    Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

### 12.9    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 12.10    Post-Confirmation Fees, Final Decree

The Liquidating Trustee will be responsible for timely payment of the fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Cases are converted or dismissed or a final decree is entered. After Confirmation, the Liquidating Trustee will serve the United States Trustee with a quarterly financial report for each quarter (or portion thereof) the case remains open. The quarterly financial report shall include the following:

(a)    A statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan;

(b)    A summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and a statement regarding the failure to make any distributions or transfers of property under the Plan;

(c)    The Liquidating Trustee's statement as to its continuing ability to comply with the terms of the Plan; and

(d)    A description of any other factors which may materially affect the Liquidating Trustee's ability to consummate the Plan.

## 12.11  Headings

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

## 12.12  Inconsistency

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

**International Foreign Exchange Concepts Holdings, Inc.**


_____/s/ Michael Meenan_____
By: Michael Meenan
Its: Chief Restructuring Officer


**International Foreign Exchange Concepts, L.P.**


_____/s/ Michael Meenan_____
By: Michael Meenan
Its: Chief Restructuring Officer


**FX Concepts, LLC**


_____/s/ Michael Meenan_____
By: Michael Meenan
Its: Chief Restructuring Officer


Dated: December 18, 2014

## Exhibit A

Preserved Causes of Action

The Debtors reserve the right to pursue all claims and causes of action that they can properly pursue in accord with law. These include:

A.    All claims against Mr. Taylor or his wife arising out of or preserved by the Taylor Settlement, the Term Sheet or any definitive documentation entered into in connection with the Term Sheet, including any claims for breach of or default under those agreements.

B.    All claims against Mr. Taylor or his wife arising out of or preserved by any agreement related to the sale of the FX Concepts Newsletter to Taylor, including claims for breach of or default under those agreements.

C.    Subject to the releases granted in the Taylor Settlement and Term Sheet, all claims for payment of sums due from Mr. Taylor or his family based upon agreements between Mr. Taylor or his family members and any of the Debtors. The principal agreements that support these claims are the Taylor Note and the Distribution and Contribution Agreement mentioned above. However, the courts may determine that other agreements -- whether in writing or made orally with officers or directors of the Debtors -- will also support claims for payment or remedies against Mr. Taylor or his wife. Accordingly, it is possible that the Debtors may assert rights or seek remedies in reliance on, inter alia, the Letter Agreement dated July 18, 2013, the powers of attorney signed in accord with that Letter Agreement, or agreements that Mr. Taylor entered into with the Debtors before he executed the Taylor Note, such as the prior agreements identified in that Note.

D.    Subject to the releases granted in the Taylor Settlement and Term Sheet, all claims against Mr. Taylor for mismanagement of the Debtors or their assets, including claims for breach of contract or breach of fiduciary duty, arising from a lack of due care or breach of the duty of loyalty in managing the Debtors. Certain former employees of the Debtors have alleged that Mr. Taylor failed to devote sufficient care and attention to the management of the Debtors due to his work for unaffiliated businesses, thereby contributing to the Debtors' financial failure. As discussed above, although allegations have been made in support of these claims, the information that the Debtors have reviewed to date does not provide a sufficient basis for them. However, the Debtors reserve the right to investigate further and to pursue appropriate mismanagement claims to the extent that a genuine factual basis for them is discovered.

E.    Subject to the releases granted in the Taylor Settlement and Term Sheet, all claims for breach of contract, breach of fiduciary duty, conversion, preferential or fraudulent transfers, fraudulent conveyances, or other improper transfers of property in which the Debtors had an interest to Mr. Taylor, family members of Mr. Taylor, companies or trusts controlled by Mr. Taylor, companies in which Mr. Taylor had an interest, or persons or entities designated by Mr. Taylor. As discussed above, although allegations have been made in support of these claims, the information that the Debtors have reviewed to date does not provide a sufficient basis for them. However, the Debtors reserve the right to investigate and to pursue appropriate claims for improper transfers to the extent that a genuine factual basis for them is discovered.

F.    Subject to the releases granted in the Taylor Settlement and Term Sheet, all defenses to any assertion by Mr. Taylor of a right of indemnification, to the extent that the defense may also be considered a "claim."

**<u>Exhibit B</u>**

Liquidating Trust Agreement

# LIQUIDATING TRUST AGREEMENT

## OF

## INTERNATIONAL FOREIGN EXCHANGE CONCEPTS HOLDINGS, INC., INTERNATIONAL FOREIGN EXCHANGE CONCEPTS, L.P. and FX CONCEPTS, LLC

### Relating to Plan of Liquidation

This *Liquidating Trust Agreement of International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P and FX Concepts, LLC Relating to Plan of Liquidation* (the "**Agreement**") is entered into as of the day of _____, 2015, by, and between International Foreign Exchange Concepts Holdings, Inc. ("**IFEC Holdings**"), International Foreign Exchange Concepts, L.P. ("**IFEC LP**") and FX Concepts, LLC ("**FXC**," and together with IFEC Holdings and IFEC LP, the "**Debtors**") and Michael Meenan, of CDG Group, LLC (the "**Liquidating Trustee**").

### WITNESSETH:

WHEREAS, on ____, 2015, the First Amended Chapter 11 Liquidating Plan of International Foreign Exchange Concepts Holdings, Inc., International Foreign Exchange Concepts, L.P. and FX Concepts, LLC (the "**Plan**"), as filed in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), procedurally consolidated in Case No. 13-13379 (REG), was confirmed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 by entry of a confirmation order; and

WHEREAS, among other things, the Plan provides for the creation of a liquidating trust (the "**Liquidating Trust**") to provide for the liquidation of each of the Debtor's assets (the "**Assets**"), and for the appointment of the Liquidating Trustee to administer to the Liquidating Trust and the liquidation of the Assets; and

WHEREAS, the Liquidating Trustee is willing to accept the duties of Liquidating Trustee upon such terms and conditions as are hereinafter set forth; and

NOW, THEREFORE, for and in consideration of the premises and mutual covenants herein contained, pursuant to the Plan, the Debtors and the Liquidating Trustee do hereby covenant and agree as follows:

### ARTICLE I

### Definitions; Interpretive Rules.

1.    *Defined Terms; Rules of Interpretation.*

1.1    *Capitalized Terms.*  Capitalized terms used herein and not otherwise defined in this Agreement shall have the meanings assigned to them in the Plan. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules,

will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. For purposes of this Agreement, Disputed Claims shall be included in the Class in which such Claims would be included if such claims were Allowed Claims.

      1.2    *Computation of Time.* In computing any period of time prescribed or allowed by this Agreement, the provisions of Bankruptcy Rule 9006(a) will apply.

      1.3    *Permitted Investments.* Permitted Investments shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtors or an Affiliate, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions included in the list of approved institutions promulgated by the Office of the United States Trustee.

      1.4    *Rules of Interpretation.* For purposes of this Agreement, unless otherwise provided herein:

      1.4.1    any reference in this Agreement to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions;

      1.4.2    any reference in this Agreement to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Agreement;

      1.4.3    any reference to any entity as a holder of a Claim or Equity Interest includes that entity's successors, assigns, and affiliates;

      1.4.4    except as otherwise specified, all references in this Agreement to Sections, Articles, and Exhibits are references to sections, articles, and exhibits of or to this Agreement;

      1.4.5    the words "herein," "hereunder," and "hereto" refer to this Agreement in its entirety rather than to a particular portion of this Agreement;

      1.4.6    the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and

      1.4.7    except where the context otherwise requires, words importing the masculine, feminine or neuter gender shall include the feminine, the masculine and the neuter, as appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

1.5    *Headings.*    The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

1.6    *Construction with the Plan.*    The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes. In the event of any inconsistency or conflict between the terms, conditions and provisions of this Agreement and the terms, conditions and provisions of the Plan, the terms, conditions and provisions of the Plan shall control.

## ARTICLE II

### *Purpose; Administration, Supervision.*

2.1    *Purpose of Agreement.*    The Debtors and the Liquidating Trustee hereby enter into this Agreement for the purposes of (a) liquidating the Assets in the manner prescribed by the Plan and this Agreement; (b) distributing the net proceeds therefrom in accordance with the terms of the Plan; and (c) engaging in any and all other activities which shall be incidental thereto. All activities of the Liquidating Trustee shall be reasonably necessary to, and consistent with the accomplishment of, these purposes. The Liquidating Trustee shall be under an obligation to make continuing efforts to dispose of the Assets, make timely distributions, and not unduly prolong the duration of the Liquidating Trust.

2.2    *Administration of the Assets.*    From and after the Effective Date, the Liquidating Trustee shall manage, administer, invest and reinvest all of the Assets, collect the income therefrom, and distribute the proceeds, all pursuant to the terms and conditions of the Plan and this Agreement. The Liquidating Trust, by and through the Liquidating Trustee, shall be authorized to prosecute any and all Avoidance Actions and Causes of Action in the name of the Debtors.

2.3    *Interests in Liquidating Trust.*    The beneficial interests in the Liquidating Trust will not be represented by certificates, but rather shall consist of an interest in the Assets as set forth in the Plan. Beneficial interests in the Liquidating Trust will not be transferable except pursuant to the laws of descent and distribution or otherwise by operation of law.

2.4    *No Further Supervision.*    The Liquidating Trustee may use, operate, and deal with the Assets without any supervision by the Bankruptcy Court, and free of any restrictions imposed on the Debtors by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case.

## ARTICLE III

### *Responsibilities, Post-Effective Date Management.*

3.1    *Responsibilities.*

3.1.1    The responsibilities of the Liquidating Trustee shall include (i) the receipt, management, supervision, and protection of the Assets on behalf of and for the benefit of the beneficiaries of the Liquidating Trust; (ii) pursuit of objections to, and estimations and settlements of, Disputed Claims; (iii) investigation, analysis, prosecution,

3

and compromise of the claims and Causes of Action included among the Assets, including, without limitation, the Avoidance Actions, all as appropriate in the exercise of the Liquidating Trustee's reasonable discretion; (iv) calculation and implementation of all distributions to holders of Allowed Claims to be paid by the Liquidating Trustee under the Plan (the "**Beneficiaries**"); (v) marketing, selling, leasing, or otherwise disposing of all of the Assets; (vi) filing all required federal, state, and local tax returns and paying taxes and all other obligations of the Liquidating Trust; (vii) winding up, as appropriate and necessary, any and all subsidiaries of either of the Debtors, and (viii) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, this Agreement, orders of the Bankruptcy Court, or as necessary and proper to carry out the provisions of the Plan.

3.1.2    The Liquidating Trustee shall act in a fiduciary capacity for the interests of the Beneficiaries as provided under the Plan.

3.2    *Notice of the Effective Date.* On or before fifteen (15) Business Days after the Effective Date, the Liquidating Trustee shall file with the Court (or cause to be filed with the Court) and provide to all holders of Claims a Notice that informs such holders of the (a) entry of the Confirmation Order; (b) a statement confirming the occurrence of the Effective Date; (c) rejection of all executory contracts not already rejected or terminated in accordance with their terms, as well as the deadline for the filing of Claims arising from such rejection; (d) procedures for changing an address of record pursuant to this Plan; and (e) such other matters as the Liquidating Trustee deems to be appropriate.

3.3    *Post-Effective Date Management.* As provided for in the Plan and herein, the Liquidating Trustee shall have the exclusive right and duty, subject to the Plan, to manage the Assets, subject to certain limitations of liability as set forth herein.

## ARTICLE IV

*Duties, Rights and Powers of Liquidating Trustee.*

4.1    *Liquidating Trustee's Duties.* The Liquidating Trustee shall manage the Assets, collect the income and make distributions to the Beneficiaries as provided under the Plan, including final distributions, as provided under the Plan and shall thereupon take such steps as provided herein and as otherwise necessary and proper to close the Bankruptcy Case.

4.2    *Liquidating Trustee's Rights and Powers.* The Liquidating Trustee shall have the powers and authority as set forth herein and in the Plan necessary to manage the Assets and effect the disposition, orderly liquidation and distribution of all Assets. The rights and powers shall include, subject to the limitations set forth in the Plan and this Agreement, the right and power to:

(a)    Sell at public or private sale, or exchange, transfer, or convey, on such terms and conditions, and at such time or times as the Liquidating Trustee shall determine, any or all of the Assets (whether tangible or intangible); to that end, grant options, make contracts, retain brokers, and sign,

4

seal, acknowledge, and deliver any and all proper deeds, or other instruments of conveyance or transfer thereof; and delegate to an attorney in fact the power to execute all documents necessary to accomplish a sale, lease, transfer, or exchange of any such property;

(b)     Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Trustee's duties hereunder and under the Plan;

(c)     Subject to any limitations contained in the Plan and herein, pay, compromise, settle, adjust, agree to, investigate, pursue, or contest any and all claims, including claims described in the Plan and herein, Causes of Action, other matters, or taxes;

(d)     Pay all taxes, expenses and obligations of the Liquidating Trust out of the Assets, including the Liquidating Trustee's fees;

(e)     Investigate, prosecute and, if necessary, litigate, any and all Avoidance Actions and Causes of Action that may belong to the Debtors or their Estates, including any Avoidance Action brought by the Debtors prior to the Effective Date, which Causes of Action, rights to payment and claims as of the Effective Date shall vest solely and exclusively in the Liquidating Trustee, for the benefit of the Liquidating Trust, pursuant to the terms of the Plan;

(f)     Establish a reserve fund (the "**Administrative Reserve**") out of the Assets, which shall be used to pay current and projected future professional fees and other administrative expenses of the Liquidating Trust. Such Administrative Reserve shall be maintained in an amount that, in the Liquidating Trustee's reasonable discretion, is necessary and appropriate to satisfy current and future professional fees and other administrative expenses of the Liquidating Trust; and

(g)     (i) Invest funds; (ii) make distributions; (iii) pay taxes and other obligations owed by the Liquidating Trust or incurred by the Liquidating Trustee or the Debtors; (iv) engage and compensate from the Assets, consultants, agents, employees, and professional persons (including, without limitation, attorneys on a contingency fee basis) to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities; (v) retain and compensate from the Assets the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Assets; (vi) liquidate and dispose of the Assets; (vii) compromise and settle Claims and Causes of Actions; (viii) act on behalf of the Debtors and their Estates in all adversary proceedings and contested matters (including, without limitation, the Avoidance Actions) pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; (ix) commence and/or pursue any and all actions involving Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in the Plan; (x) utilize Assets to purchase

appropriate insurance to insure the acts and omissions of the Liquidating Trustee; (xi), pay any other administrative expenses of the Liquidating Trust and/or the Debtors from the Assets that the Liquidating Trustee determines, in his discretion, are necessary and appropriate; and (xii) act and implement the Plan, this Agreement, and orders of the Bankruptcy Court.

4.3    *Limitations as to Losses.*    The Liquidating Trustee shall not be responsible, and shall have no liability whatsoever, to any person for any loss to the Liquidating Trust or the amount of interest thereon resulting from the investment thereof in any Permitted Investments. The Liquidating Trustee shall not invest or reinvest any Assets in a security or instrument that does not constitute a Permitted Investment. The Liquidating Trustee and the Debtors shall not have any liability to any retirement, employee benefit or pension plan of the Debtors in excess of the amounts available to be distributed from such plans.

4.4    *Selection of Agents.*    Without the need for application to or approval of the Bankruptcy Court, the Liquidating Trustee may select, determine compensation for and employ attorneys, brokers, consultants, custodians, investment advisors, asset services, auditors, accountants, and other agents (including, without limitation, attorneys, accountants and consultants retained by the Debtors during the Bankruptcy Case). The Liquidating Trustee shall avail himself of the services of counsel or special counsel. Subject to the Plan, the Liquidating Trustee may pay the salaries, fees and expenses of such agents or consultants out of the Assets. The Liquidating Trustee shall not be liable for any loss to the Liquidating Trust or any person interested therein by reason of any mistake or default of any such agent or consultant.

4.5    *Signature.*    As of the Effective Date of the Plan, the Liquidating Trustee shall have the sole signature power and authority with respect to the Liquidating Trust to (a) open and close accounts with any banking, financial or investment institution; (b) make deposits and withdrawals of cash and other property into or from any such account; (c) make or endorse checks with respect to any such account; and (d) effectuate purchases and sales of securities and give purchase and sale orders to brokers or any other third parties, and the exercise of such power and authority shall be deemed to be authorized by and to represent the decision of the Liquidating Trustee then entitled to make such decision.

4.6    *Maintenance of Register.*    The Liquidating Trustee shall, at all times maintain a register of the names, addresses and amount of the Claims as in effect on the Effective Date and as revised from time to time thereafter.

4.7    *Liability of Liquidating Trustee.*

(a)    *Standard of Care.*    The Liquidating Trustee shall not be responsible for the consequences of any act or failure to act, except for gross negligence or willful misconduct. The Liquidating Trustee shall not have any fiduciary relationship with any party by virtue of this Agreement except as specifically set forth in this Agreement.

(1)    The Liquidating Trustee shall not, solely by virtue of his position as Liquidating Trustee, be liable or in any way responsible

6

for the acts or omissions of the Debtors, their board of directors, officers, employees or agents that occurred prior to the Effective Date.

(2)    Unless indemnified to his satisfaction against liability and expense, the Liquidating Trustee shall not be compelled to do any act or to take any action toward the execution or enforcement of the powers created under the Plan or this Agreement or to prosecute or defend any suit in respect hereof. If the Liquidating Trustee requests approval from the Bankruptcy Court with respect to any act or action in connection with the Plan or this Agreement, the Liquidating Trustee shall be entitled (but shall not be required) to refrain (without incurring any liability to any person by so refraining) from such act or action unless and until he has received such instructions of approval. In no event, however, shall the Liquidating Trustee or the Debtors or any of their representatives be required to take any action which he or she reasonably determines could lead to criminal or civil liability.

(3)    The Liquidating Trustee shall not be responsible in any manner to the Debtors, their Estates, any Beneficiary, or any party in interest for:

> (i)    the creditworthiness of any party and the risks involved to the Liquidating Trust or such holder or party in interest;

> (ii)    the effectiveness, enforceability, genuineness, validity, or any due execution of the Plan or this Agreement as to any person other than the Liquidating Trustee;

> (iii)    any representation, warranty, document, certificate, report or statement made herein or furnished hereunder or in connection with the Plan or this Agreement not constituting a breach of the standard of care set forth in this Section 4.7(a) on the part of the Liquidating Trustee;

> (iv)    the existence, priority or perfection of any existing Lien;

> (v)    the observation or compliance with any of the terms, covenants or conditions of the Plan or this Agreement on the part of any party other than the Liquidating Trustee;

> (vi)    any loss to the Liquidating Trust resulting from the investment of the Assets, or their proceeds, in any Permitted Investments; or

7

(vii)    losses to any retirement, employee benefit, or pension plan of the Debtors in excess of the amounts available to be distributed from such plans.

(4)    The Debtors and the Beneficiaries, by voting for the Plan and/or accepting the benefits thereof, have agreed not to sue or otherwise pursue or seek damages from the Liquidating Trustee pursuant to the Plan or this Agreement, except for willful misconduct or gross negligence. The Liquidating Trust will indemnify, hold harmless and reimburse the Liquidating Trustee from and against any and all losses, claims, causes of action, damages, fees, expenses, liabilities, and actions for which liability is limited pursuant to this Agreement and the Plan.

(b)    *Surety Bond.*   In order to secure the faithful performance of his duties under the Plan and this Agreement, the Liquidating Trustee shall obtain at the expense of the Liquidating Trust and file with the Bankruptcy Court a surety bond, naming the United States as the obligee thereunder, in an amount equal to one hundred percent (100%) of the Cash in the Liquidating Trust. The Liquidating Trustee may increase the amount of the bond or reduce the amount of the bond from time to time as he deems necessary or proper provided that such amount equals or exceeds the amount of Cash in the Liquidating Trust. No bond shall be required if and when the amount of undistributed Cash on hand shall be less than $200,000.00.

(c)    *No Liability for Acts of Predecessor.*   No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any Liquidating Trustee in office prior to the date on which such person becomes a Liquidating Trustee, nor shall he or she be obligated to inquire into the validity or propriety of any such act or omission unless such successor Liquidating Trustee expressly assumes such responsibility. Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of Assets furnished to such successor Liquidating Trustee by such predecessor Liquidating Trustee and shall further be responsible only for those Assets included in such statement.

(d)    *No Implied Obligations.*   The Liquidating Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and in the Plan, and no other or further covenants or obligations shall be implied into this Agreement. The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Assets. The Liquidating Trustee makes no representations as to the value of the Assets or any part thereof, nor as to the validity, execution, enforceability, legality or sufficiency of this Agreement, and the Liquidating Trustee shall incur no liability or responsibility with respect to any such matters.

8

(e)    *Reliance on Documents or Advice of Counsel or Other Persons.* The Liquidating Trustee may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel, statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is believed by the Liquidating Trustee to be genuine and to be signed or presented by the proper persons. Subject to his obligation to meet the standard of care in Section 4.7(a) hereof, the Liquidating Trustee shall have no liability for any act which he may do or omit to do in reliance upon the foregoing.

(f)    *No Personal Obligation for Liabilities of the Debtors.* Holders of Claims, and other persons transacting business with the Liquidating Trustee in his capacity as Liquidating Trustee, shall be limited to the Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of the Plan, and the Liquidating Trustee shall have no personal obligation to satisfy any such liability.

4.8    *Reports; Tax Returns.* The Liquidating Trustee shall prepare and submit any and all reports required under the Plan and as may be further ordered by the Bankruptcy Court. After the Effective Date, the Liquidating Trustee shall be responsible for the filing of any and all federal and state tax returns required by law to be filed by the Liquidating Trust, including the final tax returns, and any tax liability shall be an obligation of the Liquidating Trust payable from the Assets.

4.9    *Withholding and Reporting Requirements; Tax Treatment of Liquidating Trust.* The Liquidating Trust will be treated as a "liquidating trust" within the meaning of 26 C.F.R § 301.7701-4(d). The transfer of the Assets to the Liquidating Trust shall be treated as a transfer to the Beneficiaries for all purposes of the Internal Revenue Code (e.g., sections 61(a)(12)) 483, 1001, 1012, and 1274) followed by a deemed transfer by such Beneficiaries to the Liquidating Trust. The Liquidating Trust shall be considered a "grantor" trust, and the Beneficiaries of the Liquidating Trust shall be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trustee shall value the Assets and notify the Beneficiaries of the Liquidating Trust of such valuations. The Assets shall be valued consistently by the Liquidating Trustee and the Beneficiaries for all federal income tax purposes.  In connection with all distributions made pursuant to the Liquidating Trust and all activities of the Liquidating Trust, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan and the Liquidating Trust will be subject to any such withholding and reporting requirements. The Liquidating Trustee shall file tax returns for the Liquidating Trust as grantor trusts pursuant to 26 C.F.R. § 1.671-4(a). The Liquidating Trustee may require Beneficiaries to furnish to the Liquidating Trustee its, his or her employer or taxpayer identification number ("**TIN**") as assigned by the Internal Revenue Service ("**IRS**") or proof of status as a non-U.S. person (as defined in the Internal Revenue Code), including but not limited to providing IRS forms W-9 or W-8, as the case maybe, and the Liquidating Trustee may condition any distribution to any such Beneficiaries pursuant to the Plan upon receipt of such identification number, proof of residency status or IRS form. If a Beneficiary shall fail to provide

9

the Liquidating Trustee with any requested TIN within forty-five (45) days after the request, such failure shall be deemed a waiver of all of such Beneficiaries' interests in the Liquidating Trust and rights to distribution under the Plan. Distributions that would have been made to such Beneficiary shall be distributed to the other Beneficiaries of the Liquidating Trust pursuant to the Plan based on their pro rata interests in the Liquidating Trust.

4.10    *Final Decree.* After the Estate is fully administered pursuant to the terms of the Plan and this Agreement, the Liquidating Trustee shall file with the Bankruptcy Court a motion requesting the entry of a final decree.

4.11    *Payment of Compensation and Reimbursement of Expenses of Liquidating Trustee and his agents.* The Liquidating Trustee's compensation shall be based upon daily rates typically charged in the conduct of the Liquidating Trustee's business and may be paid from the Assets on a monthly basis without further notice or order of the Bankruptcy Court. Agents retained by the Liquidating Trustee, including Professionals, may submit monthly statements to the Liquidating Trustee describing with reasonable particularity the amount of fees and expenses sought, the time expended, and the nature, extent, and value of the services provided during the period covered by such request. In the absence of objection by the Liquidating Trustee, such fees and expenses shall be paid within ten (10) days of issuance of the monthly statement without further notice or order of the Bankruptcy Court. The Liquidating Trustee may retain, compensate, employ and pay agents and Professionals on other terms, including payment on a contingency basis, subject to the agreement of the parties without need for notice or any order of the Bankruptcy Court. In the event of any objection to a compensation request, the Bankruptcy Court shall retain jurisdiction to hear and determine such dispute. Payment of reasonable fees and reasonable out-of-pocket expenses of the Liquidating Trustee and any agents or consultants employed pursuant to this Agreement shall be reimbursed as a priority from the Assets.

4.12    *Indemnification.* Pursuant to this Agreement and the Plan, the Liquidating Trustee shall be indemnified by, held harmless and receive reimbursement from Assets for any and all claims, actions, demands, losses, damages, expenses, and liabilities, including without limitation court costs, attorneys' fees and accountants' fees incurred in compliance with the standard of care set forth in Section 4.7(a). Notwithstanding the above, the Liquidating Trustee shall not be entitled to indemnification in the event that a court of competent jurisdiction determines that such person has incurred losses or claims as a result of actions or omissions that breach that standard of care.

4.13    Limitation of Liquidating Trustee's Authority.

(a)    Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not and shall not be authorized to engage in any trade or business, and shall take such actions consistent with the orderly liquidation of the Assets as are required or contemplated by applicable law, the Plan and this Trust Agreement. Notwithstanding any other authority granted in this Agreement or the Plan, the Liquidating Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of 26 C.F.R. § 301.7701-4(d).

10

(b)    To the extent the Assets include partnership interests, limited liability interests and stock in companies, it is because such property was included in the Assets at the time of confirmation of the Plan and only because these Assets could not be sold prior to being contributed to the Liquidating Trust either because (i) such a sale would have resulted in a forced "fire sale" and thus unduly impaired the value of the Assets, or (ii) neither the Debtor nor the Liquidating Trust had the legal authority to sell such assets at the time of confirmation. Other than with respect to Assets held at the time of Confirmation, as discussed in the preceding sentence, the Liquidating Trust shall not hold 50% or more of the stock (in either vote or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Assets.

(c)    The Liquidating Trust shall be required to distribute at least annually to the Beneficiaries its net income plus all net proceeds from the sale of Assets, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its Assets, the Administrative Reserve or meet claims.

## ARTICLE V

### *Distributions And Treatment Of Disputed Claims*

5.1    *Method of Distributions in General.*

(a)    *In General.* Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Liquidating Trustee to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Liquidating Trustee has been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Liquidating Trustee shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)    *Form of Distributions.* Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Liquidating Trustee pursuant to the Plan shall be made by check.

(c)    *Distributions to be on Business Days.* Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

11

(d)    *Fractional Dollars.*  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e)    *Interest and Penalties on Claims.*  Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

(f)    *Distributions to Holders as of the Distribution Record Date.*  The Liquidating Trustee shall be entitled to rely upon the register of Claims as of the Distribution Record Date. Any transfers of an Allowed Claim shall be recognized ten (10) days after written notice of such transfer is received by the Liquidating Trustee as provided herein.

5.2    *Objections to Disputed Claims.*  On and after the Effective Date, any objections to Claims against either Debtor shall be prosecuted by the Liquidating Trustee.

5.3    *Deadline for Objecting to Disputed Claims.*  Except as otherwise provided by order of the Bankruptcy Court, the Liquidating Trustee may file an objection to a Claim against either Debtor until the later of: (a) thirty (30) days after the date that such Claim becomes due and payable in accordance with its terms, or (b) one hundred twenty (120) days after the Effective Date.

5.4    *Estimation of Claims.*  The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the Bankruptcy Court determines the maximum limitation of a Disputed Claim, such determination shall not preclude the Liquidating Trustee from pursuing any supplemental proceedings to object to any payment of such Claim. All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

5.5    *Disputed Claims Reserve.*

(a)    *Establishment.*  A reserve shall be maintained equal to 100% of the distributions to which holders of Disputed Claims would be entitled

12

under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Non-Appealable Order.

(b)    *Investment of Cash.*  Cash in the Disputed Claims Reserve may be invested only in Cash Equivalents having maturities sufficient to enable all necessary payments to holders of Disputed Claims if, and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents in the Disputed Claims Reserve shall be for the sole benefit and account of the Liquidating Trustee, and the Liquidating Trustee shall be solely responsible for the payment of any income or other taxes arising therefrom.

(c)    *Distributions Upon Allowance of Disputed Claims.*  The holder of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall receive distributions of Cash from the Disputed Claims Reserve on or after the Payment Date as soon as practicable following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Non-Appealable Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to the holder of such a Claim under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No holder of a Disputed Claim shall have any claim against the respective Disputed Claims Reserve or the Liquidating Trust with respect to such Claim until the Disputed Claim shall become an Allowed Claim.

5.6    *Reversion of Unclaimed Checks.*  If a check remains unclaimed for a period of one hundred eighty (180) days after distribution, the party otherwise entitled to such distribution shall be deemed to have forfeited its right to the distribution and any future distributions, and the Liquidating Trustee may redistribute the Cash to other beneficiaries under the Plan as if such Claim was disallowed.

## ARTICLE VI

### *Beneficiaries*

6.1    *Interest Beneficial Only.*  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary to any title in or to the Assets or to any right to call for a partition or division of such assets or to require an accounting, except as may be specifically provided herein, in the Plan or the Confirmation Order.

6.2    *Ownership of Beneficial Interests Hereunder.*  Each Beneficiary shall have a beneficial interest in the Liquidating Trust solely to the extent that such Beneficiary is entitled to a distribution from the Liquidating Trust pursuant to the Plan or the Confirmation Order. Each Beneficiary shall cease to own a beneficial interest in the Liquidating Trust and cease to be a Beneficiary hereunder for all purposes immediately upon completion of the distribution by the Liquidating Trustee to such Beneficiary as required by this Agreement, the Plan and the Confirmation Order.

6.3    *Standing of Beneficiary.*  No Beneficiary shall have standing to direct the Liquidating Trustee to do or not to do any act other than as described herein.

6.4    *Rights of Beneficiaries.*    Nothing herein is intended to provide the Beneficiaries with any rights to distributions other than as set forth in the Plan.

## ARTICLE VII

### *Objections To Claims*

Following the Effective Date, the Liquidating Trustee shall be authorized to object, or to succeed or otherwise join any objection filed by the Debtors prior to the Effective Date, to Claims so as to have the Bankruptcy Court determine the amounts to be Allowed, if any, of such Claims. Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than the earlier of (i) thirty (30) days after such Claim becomes due and (ii) one hundred twenty (120) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court upon the entry of an order by the Bankruptcy Court extending such deadline. An objection to the allowance of a Claim by the Liquidating Trustee must be filed with the Bankruptcy Court and served upon the holder of the Claim and all parties who have requested notice.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtors filed after the bar date established by the Bankruptcy Court shall be disallowed as a late-filed claim, without any action by the Debtors or Liquidating Trustee, unless and until the party filing such Claim obtains (i) the written consent of the Liquidating Trustee to file such Claim late or (ii) approval from the Bankruptcy Court upon notice to the Debtors and Liquidating Trustee that permits the late filing of the Claim, in which event, the Liquidating Trustee shall have one hundred twenty (120) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Debtors.

From and after the Effective Date, the Liquidating Trustee shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims.

## ARTICLE VIII

### *Oversight.*

8.1    *Consultation with AMF.*  The Liquidating Trustee shall consult with AMF respecting the liquidation of the Assets, the resolution of Disputed Claims, and the distribution of Assets in accordance with the Plan and this Agreement, provided that any action to be taken by the Liquidating Trustee shall be in his sole discretion consistent with his duties, rights, and powers set forth in the Plan and this Agreement. The Liquidating Trustee shall provide AMF with a statement of expenditures setting forth the amount of fees and expenses paid by the Liquidating Trustee from the Assets for each three (3) month period following the Effective Date.

14

## ARTICLE IX

### *Appointment, Removal and Resignation of Liquidating Trustee.*

9.1    *Appointment of Liquidating Trustee; Acceptance of Appointment.* Michael Meenan of the firm CDG Group, LLC is hereby appointed to serve as the initial Liquidating Trustee hereunder and pursuant to the Plan. Mr. Meenan is willing to, and does hereby, accept the appointment to serve as the initial Liquidating Trustee, and to hold and administer the Assets pursuant to the terms of the Plan and this Agreement.

9.2    *Removal of Liquidating Trustee.* A Liquidating Trustee appointed pursuant to this Agreement may be removed with cause by order of the Bankruptcy Court after notice and opportunity for a hearing. For purposes of this Agreement, the term "cause" shall mean: (a) the Liquidating Trustee's gross negligence or willful failure to perform his duties under this Agreement; (b) the Liquidating Trustee's misappropriation or embezzlement of any Assets or the proceeds thereof; or (c) the Liquidating Trustee's continued or repeated negligence or failure to perform his duties hereunder. If a Liquidating Trustee is removed, or is unwilling or unable to serve (1) by virtue of his inability to perform his duties under this Agreement due to death, illness or other physical or mental disability, (2) following the liquidation of all or substantially all of the Assets, or (3) for any other reason whatsoever, such Liquidating Trustee shall be entitled to all accrued and unpaid fees, reimbursement, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

9.3    *Resignation of Liquidating Trustee.* A Liquidating Trustee may resign upon motion to the Bankruptcy Court, which resignation shall become effective at the time specified by the Court, contemporaneous with the appointment of a successor Liquidating Trustee. If a Liquidating Trustee resigns from his or her position hereunder, subject to a final accounting and the approval of the Bankruptcy Court, such Liquidating Trustee shall be entitled to all accrued, unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

9.4    *Successor Liquidating Trustee.* In the event that a Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee may be appointed by AMF, subject to Bankruptcy Court approval, or by order of the Bankruptcy Court after notice and a hearing.

## ARTICLE X

### *Effect of Agreement on Third Parties.*

10.1    *Effect of Agreement on Third Parties.* There is no obligation on the part of any purchaser or purchasers from the Estate, the Debtors or the Liquidating Trustee or any agent of the Liquidating Trustee, or on the part of any other person dealing with the Estate, the Debtors

15

or the Liquidating Trustee or any agent of the Liquidating Trustee, to see to the application of the purchase money or other consideration paid or delivered to the Liquidating Trustee, or any agent of the Liquidating Trustee, or to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Liquidating Trustee, or any agent of the Liquidating Trustee, to enter into or consummate the same upon such terms as the Liquidating Trustee may deem advisable.

## ARTICLE XI

*Waiver.*

11.1    *Waiver.*  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

## ARTICLE XII

*Termination of the Agreement; Amendment of the Agreement.*

12.1    *Termination of the Agreement.*  This Agreement will terminate only upon authorization of the Bankruptcy Court. The duties, responsibilities and powers of the Liquidating Trustee shall terminate after (i) all Causes of Action transferred and assigned to the Liquidating Trust or involving the Liquidating Trustee on behalf of the Liquidating Trust, including but not limited to the Avoidance Actions, are fully resolved, and (ii) the Assets have been distributed in accordance with the Plan and this Agreement.

12.2    *Amendment of Agreement.*  Except as otherwise set forth herein, any provisions of the Agreement may, consistent with the terms of the Plan, be materially amended, modified, terminated, revoked or altered only upon Bankruptcy Court approval.

## ARTICLE XIII

*Miscellaneous.*

13.1    *Severability.*   If any one or more of the provisions herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions, shall not be in any way impaired or affected. In such event, there shall be added as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable. The effective date of the added provision shall be the date upon which the prior provision was held to be invalid, illegal or unenforceable.

13.2    *Entire Agreement.*  This Agreement, the Plan and the Confirmation Order constitute the entire agreement of the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein. This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings,

negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement and the Plan, the Plan shall govern. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement,

      13.3   *Jurisdiction; Venue.* Each party hereto irrevocably agrees that any suit, action or proceeding with respect to this Agreement may be brought in the United States Bankruptcy Court for the Southern District of New York, and if for any reason such submission to jurisdiction is invalid, then such action, suit or proceeding may be brought in the courts of the state of New York or of the United States District Court for the Southern District of New York, and by execution and delivery of this Agreement, each party (i) irrevocably submits to each such jurisdiction and venue; (ii) waives, to the fullest extent permitted by law, any objection which it may have to the laying of the venue of any such suit, action or proceeding brought in such court; and (iii) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such party is subject by a suit upon such judgment, provided that service of process is effected as otherwise permitted by law.

      13.4   *A Waiver of Jury Trial.* Each party to this Agreement hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement or the transactions contemplated hereby.

      **IN WITNESS WHEREOF**, the undersigned have caused this instrument to be executed as of the day and year first above written to evidence their consent and agreement with the terms and provisions of this Agreement.

LIQUIDATING TRUSTEE

By: _____
Liquidating Trustee,
and not Individually

INTERNATIONAL FOREIGN EXCHANGE CONCEPTS HOLDINGS, INC.

By: _____

INTERNATIONAL FOREIGN EXCHANGE CONCEPTS, L.P.

_____

17

By:


FX CONCEPTS, LLC


_____
By: